IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-038

Filing Date: February 12, 2019

NO. A-1-CA-34919

TEXASFILE LLC,

      Plaintiff-Appellant,

v.

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF LEA AND KEITH
MANES, IN HIS CAPACITY
AS LEA COUNTY CLERK AND
CUSTODIAN OF PUBLIC PROPERTY
RECORDS,

      Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Lisa B. Riley, District Judge

Certiorari Denied, August 8, 2019, No. S-1-SC-37578. Released for Publication
September 3, 2019.

Peifer, Hanson & Mullins, P.A.
Gregory P. Williams
Charles R. Peifer
Albuquerque, NM

for Appellant

YLAW, P.C.
Robert W. Becker
April D. White
Sean E. Garrett
Albuquerque, NM

Miller Stratvert, P.A.
Virginia Anderman
Albuquerque, NM

for Appellees

InAccord, P.C.
Daniel A. Ivey-Soto, NMAC Special Counsel
Albuquerque, NM

New Mexico Association of Counties
Grace Philips, General Counsel
Brandon Huss, Associate Counsel
Santa Fe, NM

for Amicus Curiae New Mexico Association of Counties

**OPINION**

**ATTREP, Judge.**

**{1}** After numerous exchanges, Plaintiff TexasFile, LLC (TexasFile) and Defendant Lea County (the County), through its county clerk, failed to agree on a method or fee for fulfilling TexasFile's public records request for electronic copies of all the County's real property records and associated indexes. TexasFile filed a lawsuit, alleging that the fee set by the County was unreasonable and amounted to a denial of its records request. TexasFile asserted claims under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2018), the Public Records Act, NMSA 1978, §§ 14-3-1 to -23 (1959, as amended through 2015), and the Recording Act, NMSA 1978, §§ 14-8-1 to -17 (1855-56, as amended through 2017). The County moved to dismiss the complaint. The district court granted the motion on the grounds that (1) TexasFile failed to state a claim upon which relief could be granted under IPRA because its records request had not been denied, and (2) neither the Public Records Act nor the Recording Act provided TexasFile a private right of action. We conclude that the Recording Act's production provisions governed the County's obligation with respect to the records request at issue in this case and that the complaint failed to allege any violation of that act. Therefore, we affirm the district court's dismissal of TexasFile's complaint, albeit on different grounds.

**BACKGROUND**

**{2}** The relevant facts for purposes of this appeal are undisputed and drawn from the complaint. TexasFile is a Texas-based commercial entity that provides customers online access, for a fee, to real property records from Texas and other states. In October 2013, TexasFile submitted an IPRA request to the County for "an electronic copy of all Lea County real property image and index records that are maintained in digital form by or on behalf of Lea County." The County responded a few days later, explaining that it could "not provide digital copies of [its] records," but that it had "computers and printers available for public use" at a price of 50 cents per page. Further, hard copies of the

"indexing records" could be purchased "at a price per record of $.03 and a set[-]up fee of $15.00," with the charges per year averaging between "$1,100.00 and $1,600.00."

**{3}** Unsatisfied with obtaining the requested information in the form proposed by the County, TexasFile replied to the County's response several months later renewing its request for electronic production. TexasFile noted that a provision in IPRA requires records custodians to provide public records in electronic form when the records are specifically requested in electronic form and "available" in that form. TexasFile asserted that the County's records "were plainly available" electronically, given that the records were accessible on computer terminals at the County's offices. The County responded that Section 14-8-9.1 (2011) of the Recording Act requires that counties redact certain "protected personal identifier information" before third parties may "digitiz[e] or purchas[e]" records that would otherwise reveal that information. Based on that requirement, and because its records had apparently not yet been redacted, the County advised, "we do not provide digital copies of our records." The County reiterated that it made computers and printers available to the public during normal business hours, and it charged a copy fee of 50 cents per page. The County added that before leaving its offices, any copy "must be inspected for protected personal identifier information," so that redactions could be made as necessary.

**{4}** TexasFile replied, contending that Section 14-8-9.1(C) (2011) of the Recording Act required the County to make redactions before digitizing records, and asserting that electronic images should be available to TexasFile. The County responded again, explaining that because it did not have a practice of providing electronic images, it was looking at "options and investigating pricing." After a meeting of the board of county commissioners, the County offered to compile and produce its records in electronic form under the following terms. The County would charge "25 cents per image (page), $100 set[-]up fee plus the cost of the [media] used to convey the records." Any employee time expended in excess of four hours would be charged at $25 per hour. The County reported that a rough estimate of the cost of the records spanning the period from July 1, 2011, to May 2014, "would be around $40,000," plus approximately "$7,000" for the associated index. TexasFile, questioning these estimates, asked the County how it "had arrived at a price of 25 cents per image." After reiterating this request several times and receiving no substantive response, TexasFile concluded that the County had "refused to reconsider the 25-cents-per-image fee."

**{5}** TexasFile then filed its lawsuit in district court, alleging the County's fee demand "for electronic copies of . . . real property records [was] unreasonable," based on "reasonable fee" provisions appearing in IPRA, the Public Records Act, and the Recording Act. TexasFile's prayer for relief included a request for a declaratory judgment, "declaring [the County's] quoted fees for electronic copies of Lea County's real property records unreasonable as a matter of law." The County moved to dismiss. The County contended that TexasFile had no cause of action under IPRA because IPRA provides a private cause of action only to those parties whose requests for inspection have been "denied," *see* § 14-2-12(A)(2), and TexasFile's request was never denied, as the County at all times made clear the records were available for inspection

at its offices. The County further maintained that neither the Public Records Act nor the Recording Act provided TexasFile a private right of action. The district court embraced the County's positions, granted the County's motion, and dismissed TexasFile's complaint with prejudice. The court also denied TexasFile's motion for leave to amend its complaint to seek a writ of mandamus under IPRA, Section 14-2-12(B).

**{6}** TexasFile's principal argument on appeal is that the district court erred in concluding the complaint failed to allege a "denial," as required for private party enforcement under IPRA, Section 14-2-12(A). In short, TexasFile interprets IPRA's enforcement provision to allow requesters to bring actions in scenarios where custodians impose unreasonably high fees, and because TexasFile alleged facts supporting a claim of an unreasonably high fee here, the district court erred in dismissing its IPRA cause of action. TexasFile adds that, even if we decline to adopt its proposed interpretation of IPRA, we should recognize implied private rights of action under the Public Records Act and the Recording Act.

**{7}** The County responds that TexasFile does not have standing to sue under IPRA because its request has not been denied and only the Attorney General or a local district attorney has standing to bring an IPRA enforcement action not involving a denial. *See* § 14-2-12(A). The County, along with amicus curiae (New Mexico Association of Counties), next argues that the County's obligation to respond to TexasFile's records request is defined by the Recording Act, as the more specific act, rather than IPRA or the Public Records Act. Because the Recording Act does not require electronic production and permits the County to charge up to $1.00 per page, the County argues that TexasFile's complaint fails to state a claim. The County adds that the Public Records Act and the Recording Act contain no expressions of legislative intent to create implied private rights of action.

## DISCUSSION

**{8}** IPRA and the Recording Act impose competing obligations on the County to respond to TexasFile's request, and thus we are called on to resolve this conflict. We conclude that the Recording Act, as the more specific statute, governed the County's production obligation with respect to TexasFile's records request. Because the Recording Act imposes no requirement on the County to produce its documents electronically, we need not determine whether the County's quoted fee for the electronic production was unreasonable or whether the quoted fee amounts to a denial under IPRA. We further conclude that TexasFile's complaint fails to allege a violation of the production obligations set forth in the Recording Act, and thus we need not decide whether the Recording Act creates a private right of action. Accordingly, we affirm the district court's dismissal of TexasFile's complaint for failure to state a claim upon which relief can be granted.

## I.      Standard of Review

**{9}**     We review dismissals under Rule 1-012(B)(6) NMRA de novo. *See Wolinsky v. N.M. Corr. Dep't*, 2018-NMCA-071, ¶ 3, 429 P.3d 991, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-37287, Oct. 26, 2018). A dismissal for failure to state a claim is warranted only when it appears a claimant cannot recover on any version of facts provable under the claim. *See Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. In reviewing these dismissals, we accept as true all well-pleaded factual allegations in the complaint and we resolve any doubts in favor of the complaint's sufficiency. *Id.* We review de novo the underlying questions of statutory interpretation and application of the relevant statutory provisions to the facts alleged. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 16, 137 N.M. 26, 106 P.3d 1273.

**{10}**     Where, as here, we consider a ground for affirming not relied upon by or presented to the district court, we may affirm as long as application of the new ground does not require us to look beyond the factual allegations raised and considered in the district court and it would not be unfair to the appellant. *See Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264; *Wild Horse Observers Ass'n, Inc. v. N.M. Livestock Bd.*, 2016-NMCA-001, ¶ 29, 363 P.3d 1222. Our Supreme Court has explained that an appellee generally need not preserve any specific issues for review and may offer even unpreserved grounds for affirmance on appeal. *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901. Thus, we "routinely affirm district court rulings on purely legal issues where the record allows, even when the district court relied on different reasoning, and when the court did not consider the issue at all." *Morris v. Brandenburg*, 2015-NMCA-100, ¶ 141, 356 P.3d 564, *aff'd*, 2016-NMSC-027, 376 P.3d 836. Additionally, we are less likely to find unfairness where an argument is raised in the appellate briefs, as it was here, and the appellant has an opportunity to respond, even where the appellant declines the opportunity. *See Cordova*, 2009-NMSC-021, ¶ 19.

## II.     Relevant Statutory Provisions

### A.     The Public Records Act Is Not at Issue

**{11}**     In its complaint, TexasFile asserted a separate claim under the Public Records Act, relying specifically on Section 14-3-18(E). This section directs, in relevant part, that "[a] county or municipality that has inserted data in a *computer database* shall authorize an electronic copy to be made of the *computer database* . . . if the person agrees to pay a reasonable fee." Section 14-3-18(E) (emphasis added). Now on appeal, TexasFile abandons this position—unequivocally maintaining that "Section 14-3-18 of the Public Records Act is *not applicable at all* because it applies only to a 'computer database.' TexasFile did not request a 'computer database'; instead, its request was for 'Lea County real property image and index records.' " (Emphasis added.) Further, the County does not assert that the Public Records Act's county database provision in Section 14-3-18 should apply in this case. In sum, neither party has relied on Section 14-3-18 of the Public Records Act as governing the County's obligation in this case, and thus we give no further consideration to that possibility here. *See Roselli v. Rio Cmtys. Serv. Station, Inc.*, 1990-NMSC-018, ¶ 10, 109 N.M. 509, 787 P.2d 428 (concluding that claims not

raised on appeal are abandoned); *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 30, 149 N.M. 556, 252 P.3d 780 ("This Court has no duty to review an argument that is not adequately developed.").

## B.      IPRA and the Recording Act

**{12}**    IPRA and the Recording Act establish statutory schemes with distinct scopes and objectives. IPRA creates a records inspection scheme of general application, granting, with various exceptions, to "every person . . . a right to inspect public records of this state." Section 14-2-1(A). Our Legislature has explained that IPRA's purpose is to ensure that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. Of particular relevance here, IPRA requires that "[a] custodian shall provide a copy of a public record in electronic format if the public record is available in electronic format and an electronic copy is specifically requested." Section 14-2-9(B). IPRA's fee provisions provide that a custodian:

>          (1)      may charge reasonable fees for copying the public records, unless a different fee is otherwise prescribed by law;

>          (2)      shall not charge fees in excess of one dollar ($1.00) per printed page for documents eleven inches by seventeen inches in size or smaller;

>          (3)      may charge the actual costs associated with downloading copies of public records to a computer disk or storage device, including the actual cost of the computer disk or storage device;

>          (4)      may charge the actual costs associated with transmitting copies of public records by mail, electronic mail or facsimile;

>          (5)      may require advance payment of the fees before making copies of public records;

>          (6)      shall not charge a fee for the cost of determining whether any public record is subject to disclosure; and

>          (7)      shall provide a receipt, upon request.

Section 14-2-9(C).

**{13}**    The Recording Act, and associated statutes, *see* NMSA 1978, §§ 14-9-1 to -9 (1851-52, as amended through 1991) (pertaining to the recording of instruments affecting real estate); NMSA 1978, §§ 14-10-1 to -5 (1903, as amended through 2013) (pertaining to the creation and maintenance of a recording index of all recorded instruments affecting real property), have been around for much longer than IPRA,

dating back to the mid-nineteenth century. *See, e.g.*, Section 14-8-1 (1855, as amended through 2011). Our Supreme Court has explained that these recording statutes, taken together, "are intended to protect those having subsequent dealings with the [real property documented and described by real property records]." *Romero v. Sanchez*, 1971-NMSC-129, ¶ 24, 83 N.M. 358, 492 P.2d 140. They accomplish this goal by "providing a place and a method by which an intending purchaser or encumbrancer can safely determine just what kind of title he is in fact obtaining." *Id.* ¶ 23 (internal quotation marks and citation omitted). The recording statutes have thus long required that recorded documents be made publicly available in a book of record in the office of the county clerk, *see* § 14-8-14(A), and they have directed that the book of record is to provide "notice to the public of the contents thereof," Section 14-8-6.

**{14}** Unlike IPRA, the Recording Act contains no requirement that records be provided in electronic format. *Compare* § 14-2-9 (IPRA's inspection and production section, requiring electronic production), *with* § 14-8-14 (the Recording Act's inspection and production section, omitting any electronic production requirement). Likewise, the Recording Act's fee provisions omit the fee requirements pertaining to electronic production and instead provide that a county clerk:

> (1)    may charge reasonable fees for conducting searches and for reproducing or permitting reproduction of their records as well as for certifying documents;

> (2)    shall not charge fees in excess of one dollar ($1.00) per page for documents eleven inches by seventeen inches in size or smaller;

> (3)    may require advance payment of fees before making copies of public records;

> (4)    shall not charge a fee for the cost of determining whether any public record is subject to disclosure; and

> (5)    shall provide a receipt, upon request.

Section 14-8-14(B).

### III.    The Recording Act, Not IPRA, Governs the County's Obligation in This Case

**{15}** Neither party takes the position that the records TexasFile sought have been or could have been withheld in response to its request.[1] They agree that various statutory provisions require these records to be publicly available and that the County makes them publicly available at its offices. They dispute instead what obligations the County

---

1In passing, and without explanation, the County asserts that the property records requested by TexasFile are not "public records" as defined in IPRA. We are under no obligation to consider such an undeveloped argument, and given our resolution of this case on other grounds, we do not address this issue. *See Titus*, 2011-NMCA-038, ¶ 30.

had in responding to TexasFile's records request, given the various statutory provisions at play. And as noted above, IPRA's electronic production directives are at odds with the Recording Act, which contains no requirement that records be produced in electronic form under any circumstances. *Compare* § 14-2-9, *with* § 14-8-14.

**{16}** In interpreting and construing these statutory provisions, we aim to "give effect to the Legislature's intent." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350. We read statutes in their entirety and construe each provision in relation with all the others, so as "to produce a harmonious whole." *Id.* ¶ 14. The provisions of one statute, moreover, must be read together in pari materia with other statutes covering the same subject matter, with a presumption that our Legislature enacted each with knowledge of the relevant statutory and common law background. *Pub. Serv. Co. v. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 23, 128 N.M. 309, 992 P.2d 860. We construe statutes together when possible to promote the operation and purpose of each. *Id.* We often achieve this goal by reading a more specific statute as an exception to the provisions of a more general statute and by giving the more specific statute the prevailing effect. *See Prod. Credit Ass'n of S. N.M. v. Williamson*, 1988-NMSC-041, ¶ 5, 107 N.M. 212, 755 P.2d 56 ("A well established principle of statutory construction recognizes that when one statute deals with a subject in general terms and another deals with a part of the same subject more specifically, the more specific statute will be considered an exception to the general statute, and will apply."); *see also Lopez v. Barreras*, 1966-NMSC-209, ¶ 12, 77 N.M. 52, 419 P.2d 251 ("Conflicts between general and specific statutes are resolved by giving effect to the specific statute.").

**{17}** This is not the first time this Court has been called upon to resolve a dispute involving a custodian's obligation to respond to a public records request in the face of two statutes containing divergent duties. *See Crutchfield*, 2005-NMCA-022, ¶ 1. In *Crutchfield*, a Texas-based commercial entity made an IPRA request for a copy of the Department of Taxation and Revenue's (the Department) electronic severance tax database. *Id.* ¶ 4. The Department rejected the request based on Section 14-3-15.1(C) of the Public Records Act, which permits state agencies to impose use restrictions and royalty fees before producing agency databases. *Id.* ¶ 5. This Court evaluated the Department's obligation to respond to the request given the competing obligations in IPRA and the Public Records Act. We observed that "IPRA unquestionably sets a policy of citizen entitlement to access to public records." *Id.* ¶ 18. But we explained that Section 14-3-15.1(C) of the Public Records Act sets forth provisions of "very specific application relating specifically to copies of computer databases, and specifying conditions for access to and commercial use of the databases." *Id.* ¶ 23. IPRA, by contrast, contained no provision specifically addressing requests for copies of a database, and there was no dispute the requester had in fact sought a copy of the Department's database. *Id.* ¶¶ 4, 23-24. Citing the interpretive canon that the more specific statute controls when two statutes deal with the same subject, this Court concluded that the Legislature must have intended Section 14-3-15.1(C) of the Public Records Act to govern the obligation when requests for databases were made. *Id.* ¶¶ 23-24. Consequently, Section 14-3-15.1(C) created "an exception to the general public policy [favoring the greatest possible public access] underlying the IPRA." *Id.* ¶ 24. And

because the more specific provision allowed the Department to deny requests for copies of its database where a requester refuses to meet its terms, this Court concluded the Department was entitled to deny the request notwithstanding IPRA. *Id.* ¶ 27.

**{18}** We are presented with similarly incongruent statutory obligations, as was the case in *Crutchfield*, and accordingly we find the analysis in *Crutchfield* instructive here. IPRA instructs custodians that they must produce records in electronic format when available and requested in that form, *see* § 14-2-9(B), while the Recording Act imposes no such requirement on county clerks, *see* § 14-8-14. As *Crutchfield* explains, when this kind of conflict arises as a result of a public records request, we look to the statute most specifically addressing the "type of record" sought to determine the custodian's obligation in responding. *See* 2005-NMCA-022, ¶ 24; *see also Albuquerque Commons P'ship v. City Council of City of Albuquerque*, 2011-NMSC-002, ¶ 23, 149 N.M. 308, 248 P.3d 856 ("When faced with two provisions addressing the same topic, we resort to a familiar principle of statutory construction: a statute dealing with a specific subject will be considered an exception to, and given effect over, a more general statute." (internal quotation marks and citation omitted)). In this case, there is no dispute that TexasFile sought all of the County's real property image and index records, and as TexasFile concedes, the Recording Act establishes a scheme for the filing, recording, and inspection of these records. As explained above, the Recording Act has a long history, aiming to provide a mechanism by which prospective purchasers can examine real property records and placing on county clerks associated duties to make these records available and searchable for the public. *See Romero*, 1971-NMSC-129, ¶ 24; *see also* § 14-8-6 (history). IPRA creates no similarly specific scheme for real property records and, indeed, makes no reference to real property records at all. *See* §§ 14-2-1 to -12. In light of the breadth and depth of treatment given real property records in the Recording Act and the absence of the same in IPRA, principles of statutory construction, as employed in *Crutchfield*, counsel that the Recording Act's production provisions govern the County's obligation in responding to TexasFile's request. *See Crutchfield*, 2005-NMCA-022, ¶ 23 ("When two statutes deal with the same subject, one general and one specific, the specific statute controls.").

**{19}** Furthermore, in examining recent legislative history, we see no intent on the part of the Legislature to apply IPRA's electronic production requirement to the records request in this case. Both IPRA and the Recording Act were amended in 2011. At that time, the provision requiring the electronic production of documents was added to Section 14-2-9 of IPRA. *See* § 14-2-9(B) (2011). During the same session, the Legislature revamped the section in the Recording Act pertaining to searching and charging for records maintained in county clerks' offices. *Compare* § 14-8-14 (1886-87), *with* § 14-8-14 (2011). That amendment conformed the Recording Act's fee provisions in large part to IPRA's fee provisions. *Compare* § 14-8-14(B)(2) to (B)(5), *with* § 14-2-9(C)(1), (2), (5), (6), (7). But significantly, when the Legislature revamped the Recording Act to conform its fee provisions to those set forth in IPRA, it omitted IPRA's electronic production requirement and related fee provisions. *See* § 14-8-14(B) (listing identical fee provisions as those found in Section 14-2-9(C)(2), (5), (6), (7), but omitting provisions pertaining to electronic production found in Section 14-2-9(C)(3), (4)). This

omission signals the Legislature's intent that IPRA's electronic production requirement and related fee provisions do not apply to records requests like those at issue in this case. *See, e.g.*, *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 25, 148 N.M. 426, 237 P.3d 728 ("[I]f a statute on a particular subject omits a particular provision, inclusion of that provision in another related statute indicates an intent that the provision is not applicable to the statute from which it was omitted." (alteration, internal quotation marks, and citation omitted)).

**{20}**    There are many reasons the Legislature could have determined that the electronic production requirement in IPRA was unsuitable for real property records filed and recorded in county clerks' offices—one being the safeguarding of protected personal identifier information. Section 14-2-1(B) of IPRA authorizes, but does not require, public bodies to redact protected personal identifier information before permitting inspection or copying. The Recording Act pushes the protection a step further—requiring, as opposed to merely authorizing, that redaction of protected personal identifier information be made before third parties may purchase copies. *See* § 14-8-9.1(C). And the Recording Act subjects county clerks to damages suffered by injured parties for their failure to comply with the requirements and duties of the Recording Act. Section 14-8-10. So for real property records in particular, the Legislature established heightened protection, perhaps recognizing the additional risks of disclosure of records linking personal identifier information to real property information. *See City of Las Cruces v. Pub. Emp. Labor Relations Bd.*, 1996-NMSC-024, ¶ 9, 121 N.M. 688, 917 P.2d 451 ("To permit disclosure of certain types of information could threaten the well-being of individual citizens by unnecessarily revealing information of a personal nature." (alteration, internal quotation marks, and citation omitted)). And it takes little imagination to appreciate the onerous burden county clerks' offices may bear to redact in electronic format protected personal identifier information from their voluminous records in order to ensure the privacy interests of real property owners. This supports our conclusion that the Legislature acted with intention to exempt county clerks from the electronic production requirement in IPRA.

**{21}**    Notwithstanding *Crutchfield* and basic principles of statutory construction, TexasFile offers various arguments why the County's obligation should be governed not by the Recording Act but instead by IPRA. First, TexasFile points out that New Mexico cases instruct that IPRA provisions are to be construed broadly to carry out its legislative purpose. *See, e.g.*, *San Juan Agr. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 15, 150 N.M. 64, 257 P.3d 884 ("Where there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed." (internal quotation marks and citation omitted)). That principle, TexasFile maintains, suggests we should look to IPRA for the County's obligation. Our above analysis, however, puts this argument to rest—in cases featuring conflicting guidance, we look to the more specific statute for the obligation, even if this "creat[es] an exception to the general public policy underlying the IPRA." *Crutchfield*, 2005-NMCA-022, ¶ 24.

**{22}**    As an aside, TexasFile contends that a clause in Section 14-8-9.1 (2011) of the Recording Act makes records filed and recorded in county clerks' offices subject to

IPRA in its entirety. Section 14-8-9.1(A) (2011), which has since been amended to eliminate the clause TexasFile relies upon, specified that "[e]xcept as provided in this section, all documents filed and recorded in the office of the county clerk are public records, *subject to disclosure pursuant to* [*IPRA*]." (Emphasis added.) TexasFile's contention runs counter to the plain meaning of "disclosure." As used in IPRA, "disclosure" simply means to make a record available for inspection. *See* § 14-2-9(A) ("Requested public records containing information that is *exempt and nonexempt from disclosure* shall be separated by the custodian prior to inspection, and the *nonexempt information shall be made available for inspection.*" (emphases added)); *see also Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/disclose (last visited on Jan. 19, 2019) (defining "disclose" as "to open up," "to expose to view," "to make known or public"). Had the Legislature intended to import IPRA's electronic production requirement into Section 14-8-9.1(A), it certainly could have chosen words to that effect. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)). Furthermore, TexasFile's broad interpretation of the former version of Section 14-8-9.1(A) (2011) would render the Recording Act's production and fee requirements in Section 14-8-14(B) superfluous. *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 ("Statutes must be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)).

**{23}** In sum, given the conflicting guidance regarding electronic production in IPRA and the Recording Act, the comprehensive and specific treatment of real property records in the Recording Act and the absence of specific treatment in IPRA, the clear omission of an electronic production requirement in the Recording Act, as well as the heightened protection of confidential information in the Recording Act, we conclude that the Recording Act's production requirements governed the County's obligation to respond to TexasFile's records request.

**IV.  The District Court Correctly Determined That TexasFile Failed to State a Claim**

**{24}** Having concluded that the Recording Act governed the County's obligation here, we next turn to whether the complaint alleged any violations of that act. Under the Recording Act, the County was required to redact any protected personal identifier information before releasing documents to TexasFile. *See* § 14-8-9.1(C). As TexasFile's complaint makes clear, the County insisted on complying with this obligation. The County also was required to make its records available for TexasFile's inspection during regular business hours. *See* § 14-8-14(A). The complaint again reflects that the County proposed to meet this requirement. The County also was authorized to charge "reasonable fees" for conducting searches and reproducing its records, along with fees "not in excess of one dollar ($1.00) per page" for documents eleven-by-seventeen inches in size or smaller. *See* § 14-8-14(B)(1), (2). Whether those authorizations might sometimes conflict is unclear, but they do appear in the conjunctive. Further, TexasFile's complaint alleges that the County quoted a fee of 50 cents per printed page

and makes no contention that this fee was unreasonable; the complaint again fails to allege that the County's initial proposal did not comply with Section 14-8-14(B) of the Recording Act. At the same time, the County had no obligation to provide electronic copies because the Recording Act imposes no such obligation, and thus the County's later efforts to accommodate TexasFile gave rise to no violation under any of the provisions TexasFile relies upon. Thus, even if the Recording Act provides a private right of action, the complaint here has failed to allege a violation of that act.

**{25}** In short, we conclude that TexasFile failed to state a claim upon which relief can be granted and dismissal of the complaint was appropriate. Given TexasFile's failure to state a claim, we further conclude that the district court correctly denied TexasFile's request for declaratory relief. *See, e.g.*, *Am. Linen Supply of N.M., Inc. v. City of Las Cruces*, 1963-NMSC-176, ¶ 7, 73 N.M. 30, 385 P.2d 359 ("[U]nless a valid cause of action is stated under the rules of substantive law, there can be no recourse to declaratory judgment procedure to reach the desired end."). Finally, given the lack of any violation of a "clear, mandatory duty" on the facts alleged, the district court correctly denied TexasFile's motion to add a request for mandamus to its complaint. *See State ex rel. Whitehead v. Vescovi-Dial*, 1997-NMCA-126, ¶¶ 4, 16, 124 N.M. 375, 950 P.2d 818 (concluding mandamus is inappropriate unless "clear-cut mandatory duty" to perform some action is identified).

**CONCLUSION**

**{26}** We affirm the district court's dismissal of TexasFile's complaint.

**{27}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**J. MILES HANISEE, Judge**