The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **October 18, 2022**

**No. A-1-CA-38333**

**CELINA HERNANDEZ and DAVID HERNANDEZ, Individually, and ARTHUR BUSTOS, as Personal Representative of the Wrongful Death Estate of CAIN HERNANDEZ,**

Plaintiffs-Appellants,

v.

**ROBERT REUTER, M.D. and ONLINE RADIOLOGY MEDICAL GROUP, a foreign corporation,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Judge**

The Spence Law Firm NM, LLC
Dennis K. Wallin
Alisa C. Lauer
Erin M. Marshall
Albuquerque, NM

Fine Law Firm
Mark D. Fine
Albuquerque, NM

for Appellants

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellees

**OPINION**

**YOHALEM, Judge.**

{1}     Cain Hernandez died from a heart condition when he was just five days old. His parents, Celina and David Hernandez, and the personal representative of Cain's wrongful death estate, Arthur Bustos (collectively, Plaintiffs), brought this medical malpractice action against Robert Reuter, M.D., and Online Radiology Medical Group, Dr. Reuter's practice (collectively, Defendants), for negligence,[1] alleging that Dr. Reuter failed to detect Cain's enlarged heart when he read Cain's chest x-ray, and failed to make a differential diagnosis of a congenital heart defect. Plaintiffs alleged that, as a result of Dr. Reuter's negligence, Cain's treating physicians failed to timely provide lifesaving treatment for Cain's heart defect.

{2}     The district court granted summary judgment to Dr. Reuter and Online Radiology based on Plaintiffs' failure to establish causation with expert medical testimony. Concluding that Plaintiffs raised a genuine issue of material fact as to causation requiring resolution at a trial on the merits, we reverse and remand.

**Factual and Procedural Background**

{3}     Cain Hernandez was born on April 9, 2013, at Carlsbad Medical Center (CMC) in Carlsbad, New Mexico, and was discharged from CMC approximately

---

[1]Plaintiffs also sued Cain's treating physicians, Dr. Peter Newell and Dr. Kwok Sung. The claims against those doctors were resolved and are not at issue in this appeal.

twenty-four hours later. Although not diagnosed prior to his discharge from the hospital, Cain was born with a congenital heart defect.

{4} Cain's parents brought him back to CMC four days after his birth, on Saturday, April 13, 2013, at approximately 6:00 p.m. for emergency treatment. Cain was treated in CMC's emergency department by Dr. Newell, Dr. Sung, and other CMC medical staff. Dr. Newell's and Dr. Sung's initial working diagnosis was that Cain was suffering from sepsis.

{5} CMC contracted with Online Radiology to perform after-hours and weekend remote radiology services. On the night of April 13, between approximately 8:30 and 9:30 p.m., several portable x-rays were taken of Cain's chest and transferred electronically to Dr. Reuter, a radiologist, who interpreted Cain's chest x-rays. Dr. Reuter's report made no mention of Cain's heart, failing to report that it was enlarged. Dr. Reuter also did not offer a differential diagnosis of congenital heart defect.

{6} Plaintiffs produced an affidavit and deposition testimony from their expert radiologist, Dr. Josef Nisenbaum, who was prepared to testify at trial that Dr. Reuter's failure to detect and promptly report Cain's enlarged heart to his treating physicians and to suggest a differential diagnosis of congenital heart defect was a breach of the standard of care. For purposes of their motion for summary judgment, Defendants conceded that there was a disputed issue of material fact as to whether

Dr. Reuter misread Cain's chest x-rays, and whether this misreading was a breach of the standard of care.

{7}    Cain was transferred by ambulance to Sierra Providence East Medical Center in El Paso, Texas, arriving in the early morning of April 14, 2013. At the El Paso hospital, Cain was correctly diagnosed with the heart defect aortic coarctation based on a chest x-ray showing an enlarged heart, followed by an echocardiogram. Cain was promptly treated with prostaglandin, a medication both parties acknowledge is lifesaving for an infant with an aortic coarctation if administered in time. The medication is considered a "life[]saving bridge treatment that stabilizes a patient" until corrective surgery can be performed.

{8}    Cain was again transferred, this time to the Children's Medical Center in Dallas, Texas, a specialty hospital that could perform the required heart surgery. Cain was pronounced dead two hours after his arrival at that hospital.

{9}    Defendants moved for summary judgment on a single ground—that Plaintiffs' responses to discovery failed to reveal any competent expert testimony establishing a causal connection, to a reasonable degree of medical probability, between Dr. Reuter's breach of the standard of care and Cain's injuries. Defendants claimed that the absence of such expert testimony required dismissal. Defendants supported their motion for summary judgment by pointing to alleged inadequacies in Plaintiffs' disclosure of their expert witnesses and in Plaintiffs' description of their experts'

anticipated testimony in discovery. Defendants focused on the affidavit of Plaintiffs' expert in radiology, Dr. Nisenbaum, claiming that Dr. Nisenbaum's affidavit failed to explain how Dr. Reuter's breach of the standard of care in reading Cain's chest x-rays proximately caused Cain's death or his loss of a chance of survival. Defendants' summary judgment motion also quoted portions of the affidavits and depositions of Plaintiffs' experts in pediatrics and pediatric cardiology, Dr. Deborah Silver and Dr. Doff McElhinney, in which these experts disavowed any intention of testifying to Dr. Reuter's negligence, or to whether that negligence made a difference in the outcome for Cain.

{10} Plaintiffs responded by arguing that Defendants failed to establish a prima facie case as to lack of expert causation testimony by, introducing only incomplete and misleading evidence to support their claim, and even if Defendants had established a prima facie case, the affidavits and deposition testimony of Plaintiffs' medical experts included in Plaintiffs' summary judgment response raised a genuine issue of material fact as to causation. Plaintiffs argued that causation could properly be established through the testimony of multiple witnesses and need not be presented through a single expert.

{11} Plaintiffs did not claim in the district court and do not claim on appeal that Dr. Nisenbaum's testimony established the necessary causal link between Dr. Reuter's

negligence and Cain's death. Plaintiffs instead rely on other medical experts and lay testimony to establish a causal chain.

{12}  Plaintiffs began with the breach of the standard of care, which they established through the affidavit of Dr. Nisenbaum. Dr. Nisenbaum's affidavit stated that the standard of care required a radiologist reading an infant's chest x-ray to report on the condition of the infant's heart, and if the heart is enlarged, to suggest a differential diagnosis of a congenital heart defect. Dr. Nisenbaum reported that, in his expert opinion, Dr. Reuter had breached the standard of care by failing to detect Cain's enlarged heart, failing to make a differential diagnosis of a congenital heart defect, and failing to immediately phone Cain's treating physicians with his findings.

{13}  Plaintiffs next relied on Dr. Deborah Silver, a pediatrician, referring to her deposition testimony to establish that the failure of Cain's treating physicians to consider an alternative diagnosis of congenital heart defect delayed treatment with prostaglandin, a medication both parties agreed could prevent an infant's death by keeping the infant alive until heart surgery can be performed. Dr. Silver testified that time was of the essence in administering prostaglandin: The sooner the better. If administered in time, Dr. Silver explained that "these kids have a very, very high survival rate," around 95 percent. Dr. Silver also testified that if a differential diagnosis of congenital heart defect is proposed for an infant, "you would consider starting treatment right away because it is lifesaving."

{14}    Plaintiffs also attached portions of the deposition of their expert pediatric cardiologist, Dr. McElhinney, who testified that "earlier diagnoses or treatment" would have prevented Cain's death and that the failure to timely diagnose and treat was, to a reasonable degree of medical probability, the proximate cause of Cain's death.

{15}    Cain's treating physicians, Dr. Sung and Dr. Newell (who were then defendants), submitted affidavits in which they admitted that receipt of a radiological report that Cain's heart was enlarged would have redirected their treatment of Cain. Dr. Sung's affidavit stated that if he had been told that Cain had an enlarged heart, it "would have caused [him] to place a cardiogenic cause for Cain's presentation higher on [his] differential diagnosis." Dr. Newell testified that a correct radiology report "would certainly have impacted the course of my treatment . . ., and possibly would have led to a faster administration of prostaglandin."

{16}    Plaintiffs relied on Dr. Nisenbaum's affidavit and deposition for a general explanation of the role of a radiologist and of a radiologist's report in guiding a patient's treatment. Dr. Nisenbaum concluded his affidavit by stating that "[Dr. Reuter's] error of omission may have led to misdirection of clinical care." This statement was the subject of a motion in limine filed by Defendants to exclude Dr. Nisenbaum's testimony related to causation. Defendants' motion alleged that Dr. Nisenbaum was not qualified to testify as to whether Dr. Reuter's error misdirected

6

care, or otherwise was a cause of Cain's death because he was not a pediatrician and had not reviewed Cain's medical records. Defendants argued that therefore, Dr. Nisenbaum's testimony that "missing the findings [in a radiology report] can clearly delay appropriate management of [a patient,]" without tying that opinion to the particular facts of Cain's treatment, is inadmissible speculation. The district court granted Defendants' motion, concluding that Dr. Nisenbaum "is not qualified to provide causation evidence with regards to the radiology or the ultimate cause of death."[2]

[2]Plaintiffs do not contend on appeal that Dr. Nisenbaum's causation testimony was sufficient to raise a dispute of fact for trial on causation. Indeed, Plaintiffs claim that they need not rely on Dr. Nisenbaum's causation testimony at all to successfully defend against summary judgment—that other medical experts draw the necessary causal connection. Plaintiffs, nonetheless, argue on appeal that Dr. Nisenbaum's causation testimony is relevant, would be helpful to the jury, and is not speculative. We agree that Dr. Nisenbaum's testimony informing the fact-finder of the role played by a radiologist in the treatment of patients and of the potential impact on treatment of an incorrect radiology report is relevant and admissible, even though it leaves to pediatric expert witnesses the question of whether Dr. Reuter's error caused a delay in Dr. Newell's and Dr. Sung's treatment of Cain. Dr. Nisenbaum is qualified to testify about the role played by a radiology report in treating a patient, such testimony would assist the trier of fact in understanding the impact of an erroneous radiology report, and Dr. Nisenbaum's testimony was founded on many years of specialized experience. *See State v. Yepez*, 2021-NMSC-010, ¶ 19, 483 P.3d 576 (holding that to be admissible expert testimony must be offered by a qualified witness, must assist the fact-finder in deciding matters at issue in the case, and must be based on reliable specialized knowledge or experience). We leave it to the district court, with this guidance, to rule on any particularized objections to statements by Dr. Nisenbaum that may be unduly speculative at trial.

7

{17} The district court, after granting Defendants' motion to exclude Dr. Nisenbaum's statement that "[Dr. Reuter's] error of omission may have led to misdirection of clinical care," concluded that the court was required, apparently because of that exclusion, to grant Defendants' motion for summary judgment with regard to "the lack of expert testimony on causation." The district court's written order gave no further explanation for the court's decision granting summary judgment.

{18} Plaintiffs appeal.

**DISCUSSION**

{19} In reviewing an appeal from an order granting summary judgment, we are required to determine if material disputed issues of fact require a trial on the merits. We do not attempt to resolve these issues of fact; our role is to determine if such issues exist. *See Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 10, 90 N.M. 753, 568 P.2d 589; *accord Gonzalez v. Gonzalez*, 1985-NMCA-071, ¶ 29, 103 N.M. 157, 703 P.2d 934 ("Summary judgment is not used to decide an issue of fact, but to determine if one exists."). In making this determination, we give the nonmoving party the benefit of all reasonable doubts, drawing all inferences from the evidence in favor of a trial on the merits. *Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 10, 114 N.M. 228, 836 P.2d 1249.

{20} We conduct our review by looking first "to whether [the] defendants made a prima facie case that no genuine issue of material fact existed and, if so, whether [the] plaintiffs rebutted the prima facie case." *Id.* ¶ 9 (alteration, internal quotation marks, and citation omitted).

**I.     Defendants Made a Prima Facie Case for Summary Judgment**

{21} Plaintiffs contend first that Defendants failed to meet their initial burden of stating a prima facie case for summary judgment. A defendant seeking summary judgment in a medical malpractice action can establish a prima facie case by negating at least one of the essential elements of the plaintiff's claim. *Id.* ¶ 14. In a medical malpractice action, there are three essential elements that a plaintiff must establish to avoid summary judgment: "(1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice . . .; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries." *Id.* ¶ 13. In this case, Defendants' motion for summary judgment focused solely on the third element, the element of causation, and sought to establish that Plaintiffs had not presented expert medical testimony that to a reasonable degree of medical probability, Dr. Reuter's negligence was a proximate cause of Cain's death or loss of a chance of survival.

{22} Plaintiffs argue on appeal that Defendants failed to establish a prima facie case for summary judgment because they provided only incomplete and misleading

citations to portions of Plaintiffs' evidence and Plaintiffs' responses to discovery. Plaintiffs suggest that Defendants' list of undisputed facts is similar to a showing we deemed insufficient in *Diaz v. Feil*, 1994-NMCA-108, ¶ 6, 118 N.M. 385, 881 P.2d 745. In *Diaz*, the defendant's motion for summary judgment claimed only that "any act or omission on the part of [the] . . . [h]ospital was not the proximate cause of [the p]laintiff's injuries." *Id.* ¶ 4. This Court held that the defendant's declaration was insufficient to establish a prima facie showing because it lacked "a factual basis negating the existence of proximate cause." *Id.* ¶ 6.

{23}     There is no question here, however, that Defendants' showing was more than a bare assertion that causation was lacking. Defendants relied on Plaintiffs' answers to discovery, on the affidavit of Dr. Nisenbaum, and on selected statements from the affidavits and depositions of Plaintiffs' medical experts to suggest that Plaintiffs did not have any expert medical evidence of causation. Plaintiffs' argument that Defendants have presented an inaccurate, incomplete, and misleading summary of the affidavits and depositions of Plaintiffs' experts is appropriate rebuttal; Plaintiffs' argument does not negate the existence of Defendants' prima facie case. Under *Blauwkamp*, a plaintiff's admissions in discovery or statements by a plaintiff's experts that they lack certain evidence or are unable to express an opinion are sufficient to establish a prima facie case for summary judgment. *See* 1992-NMCA-048, ¶¶ 15-16 (holding that a moving party is not required "to support its motion

10

with affidavits of medical experts or other sworn testimony *affirmatively disproving* [the p]laintiff's claims" and may make out a prima facie case by relying on admissions that they lack certain expert evidence (emphasis added)). Accordingly, the burden shifted to Plaintiffs upon the filing of Defendants' summary judgment motion to rebut Defendants' statement of undisputed facts with "specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted).

{24} Having concluded that Defendants' motion for summary judgment presented a prima facie case, we next address whether Plaintiffs carried their burden of presenting sufficient admissible evidence to raise a genuine issue of fact as to causation.

**II. Plaintiffs' Affidavits and Depositions in Response Raise Genuine Issues of Material Fact as to Whether Dr. Reuter's Negligence Was a Proximate Cause of Cain's Death**

{25} Plaintiffs responded to the Defendants' motion for summary judgment with an extensive list of specific evidentiary facts, supported by the affidavits and deposition testimony of their expert witnesses. Plaintiffs argue that their experts' testimony, together with factual testimony by Cain's treating physicians, is together sufficient to establish each element of a causal chain originating with Dr. Reuter's failure to detect Cain's enlarged heart, make a differential diagnosis of congenital

heart defect, and communicate that diagnosis to Cain's treating physicians. This breach of the standard of care by Dr. Reuter, Plaintiffs maintain, led to a delay in administering the correct treatment, which in turn contributed to and was a proximate cause of Cain's death or loss of a chance of survival. Plaintiffs' summary judgment response relied on the testimony of (1) Dr. Nisenbaum, a radiologist, to establish a breach of duty; (2) Dr. McElhinney, a pediatric cardiologist, and Dr. Silver, a pediatrician, to establish that the proximate cause of Cain's death, to a reasonable degree of medical probability, was the failure to timely diagnose and treat Cain's congenital heart defect; (3) Dr. Nisenbaum, Dr. Reuter, and Dr. Maxwell, radiologists, to establish that a radiologist's report and differential diagnosis guides treatment; (4) Dr. Sung and Dr. Newell, Cain's treating physicians, to establish that had they received a correct differential diagnosis from Dr. Reuter, it would, in fact, have impacted their treatment of Cain and caused them to place congenital heart defect higher on their list of differential diagnoses, and possibly would have expedited lifesaving treatment;[3] Dr. Roberto Canales, Cain's treating physician in

---

[3]Defendants argue that Dr. Sung's and Dr. Newell's affidavits are problematic and should have been excluded by the district court. Defendants argue specifically that Dr. Sung's affidavit is a sham and Dr. Newell's affidavit was untimely. We are not persuaded by these arguments. The district court determined that Defendants' motions to exclude Dr. Newell's and Dr. Sung's affidavits were moot and did not rule on their merits. Nevertheless, in reviewing the district court's summary judgment ruling, we must evaluate the "admissible evidence" offered by Plaintiffs to rebut Defendants' prima facie case. *See Blauwkamp*, 1992-NMCA-048, ¶ 18. For that reason, we may consider the affidavits in our evaluation of the propriety of

12

El Paso, Texas, who testified that his reading of Cain's chest x-ray at Providence Memorial Hospital led to prompt treatment; and (6) the logical inference a jury is able to draw that a delay in administering treatment was likely to result when crucial diagnostic information was not timely communicated to Cain's treating physicians.

**{26}** Defendants do not dispute the existence of this testimony in the summary judgment record; they argue instead that having several experts and fact witnesses testify to a chain of causation based on each expert's specific expertise is not sufficient to meet the requirement for expert medical testimony that to a reasonable degree of medical probability, Dr. Reuter's breach of the standard of care was a proximate cause of Cain's death. In other words, Defendants argue that a single expert must opine as to both breach of the standard of care and causation. Although the district court did not offer a full explanation of its ruling, its statement tying the exclusion of Dr. Nisenbaum's causation testimony directly to the court's grant of summary judgment appears to indicate that the district court agreed with

---

summary judgment here. Upon close review, we see no conflict between Dr. Sung's testimony that he was initially confident in his diagnosis of sepsis and his later statement that, had he received a radiology report stating that Cain had an enlarged heart, that report would have affected his diagnosis and treatment. *See Rivera v. Trujillo*, 1999-NMCA-129, ¶¶ 8-12, 128 N.M. 106, 990 P.2d 219 (defining a "sham" affidavit as one that directly contradicts unambiguous admissions previously made). As to Defendants' claim that Dr. Newell's affidavit was untimely filed, Defendants overlook the district court's grant of permission for the parties to file supplemental motions, responses, or replies after Dr. Nisenbaum was deposed. Dr. Newell's affidavit was thus timely filed during the permissible period for supplemental evidence.

Defendants' argument that anything other than a statement by a single medical expert that Dr. Reuter breached the standard of care and that his negligence was the proximate cause of the Plaintiffs' injury to a reasonable degree of medical probability is insufficient to defeat summary judgment. We do not agree.

{27} Defendants overlook two well-settled principles governing summary judgment in New Mexico: first, in reviewing an order granting summary judgment, "we examine the whole record," *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243, and second, in doing so we view "the facts in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Ridlington v. Contreras*, 2022-NMSC-002, ¶ 13, 501 P.3d 444 (internal quotation marks and citation omitted).

{28} The principle that in evaluating whether summary judgment was appropriately granted, we consider all of the evidence in the record and draw all reasonable inferences in support of trial on the merits, requires us to reject Defendants' claim that a single witness must testify that to a reasonable degree of medical probability, Dr. Reuter's negligence was a cause of Cain's death. A party responding to a motion for summary judgment can put facts in dispute through multiple witnesses whose testimony must be viewed together, with inferences drawn in the responding party's favor to form a complete picture. There is nothing unique about causation in a

medical malpractice case that requires a summary statement of all elements of negligence by a single witness.

{29}   Our Supreme Court's opinion in *Zamora*, a medical malpractice case, provides an example of our Supreme Court's reliance on both factual testimony and the testimony of multiple medical experts to reverse a grant of summary judgment by the district court. 2014-NMSC-035, ¶¶ 4, 6-7. Our Supreme Court's decision in *Zamora* addresses whether, in the absence of a single expert witness attesting to both breach of the standard of care and causation, the patient's evidence was nonetheless sufficient to create a genuine dispute of fact for trial as to whether a delay by a radiologist in communicating a differential diagnosis of cancer contributed to the patient's loss of a better chance of survival. *See id.* ¶¶ 21, 23. As is the case here, the patient in *Zamora* relied on affidavits from a series of experts and treating physicians. *See id.* ¶ 23. A treating physician testified that she would have acted differently with more information, just as Dr. Newell and Dr. Sung testified by affidavit in this case that they would have acted differently. A medical expert witness opined that delay in diagnosis and treatment of cancer would decrease the patient's chance for survival, just as Dr. Silver and Dr. McElhinney testified in this case as to Cain's chances of survival, and a radiologist testified about how a diagnosis is generally communicated from a radiologist to a treating doctor, much like Dr. Nisenbaum's testimony in this case. *Id.* Our Supreme Court in *Zamora* held that not

every element of a medical malpractice claim requires expert testimony and that some evidence, like whether a radiologist's delay in informing a patient's treating doctor of a possible cancer diagnosis amounts to negligence, could be understood without an expert opinion. *Id.* ¶ 26 (holding that expert testimony is required only where the fact-finder is called upon to decide medical issues that are not in the realm of ordinary understanding). Considering all of the evidence, both fact and expert testimony together, our Supreme Court held that the affidavits and depositions raised a genuine issue of material fact for trial as to both breach of the standard of care and causation. *Id.* ¶¶ 23-25.

{30}    Applying these principles of law, Plaintiffs' evidence demonstrates genuine issues of material fact as to whether Dr. Reuter's reading of Cain's chest x-ray  was a breach of the standard of care, and whether Dr. Reuter's breach of the standard of care proximately caused Cain's injuries. *See Blauwkamp*, 1992-NMCA-048, ¶ 13. Plaintiffs' response was supported by the opinions of Dr. Nisenbaum as to the standard of care and its breach; the opinions of Dr. McElhinney and Dr. Silver that any amount of delay in giving prostaglandin, a lifesaving treatment, reduced Cain's chance of survival; the admissions of Cain's treating physicians, Dr. Newell and Dr. Sung, that their treatment of Cain would have been affected by the timely receipt of a radiologist's report informing them that Cain's heart was enlarged; and finally, the factual testimony describing the extended length of time before Cain was transported

to an El Paso hospital, where he was correctly diagnosed and treated. This factual and expert testimony taken together is sufficient to show a genuine issue of fact for trial as to each element necessary to establish Dr. Reuter's negligence, including causation.

{31} Summary judgment is not favored in New Mexico courts: "Summary judgment is not appropriate where there is the slightest doubt as to the existence of an issue of material fact." *Callaway v. N.M. Dep't of Corr.*, 1994-NMCA-049, ¶ 7, 117 N.M. 637, 875 P.2d 393. The combined evidence in the summary judgment record creates more than a slight doubt as to the existence of a dispute of fact about whether Dr. Reuter's breach of the standard of care was a proximate cause of Cain's death or loss of a chance of survival. Summary judgment therefore was not properly granted.

**III. Defendants' Additional "Undisputed Facts" Do Not Change the Result**

{32} Finally, Plaintiffs note that Defendants' briefing refers to several additional "undisputed facts" not included in their motion for summary judgment. Defendants appear to argue on appeal an alternative ground for summary judgment not relied on by the district court. We may consider a ground for affirming not relied on by the district court so long as that argument does not "require us to look beyond the factual allegations raised and considered in the district court and it would not be unfair to the appellant." *TexasFile LLC v. Bd. of Cnty. Comm'rs of Cnty. of Lea*, 2019-

NMCA-038, ¶ 10, 446 P.3d 1173. Since, in this case, the parties have addressed Defendants' additional "undisputed facts" in supplemental briefing in the district court and in their briefs on appeal, we see no unfairness to appellant in proceeding to address Defendants' argument.

{33}     Defendants argue that, assuming Plaintiffs have successfully established a dispute of fact as to whether Dr. Reuter's negligence delayed the diagnosis of Cain's congenital heart defect, Plaintiffs failed to establish that any delay in Cain's diagnosis delayed the provision of appropriate treatment. Defendants point to evidence in the summary judgment record that shows that (1) CMC had no echocardiogram equipment, which Defendants argue was essential to confirm a differential diagnosis of a congenital heart defect before treatment with prostaglandin could begin; (2) CMC had no prostaglandin on hand and so prompt treatment could not have been provided; and (3) Cain's transfer to a hospital that had prostaglandin on hand could not have happened any more quickly than the more than five hours it took to transport him to El Paso.

{34}     We do not agree that any of Defendants' three assertions are undisputed. All three are rebutted by evidence sufficient to create a dispute of fact for trial. We note that Plaintiffs do not have the burden of establishing with absolute certainty that a timely differential diagnosis would have saved Cain's life. *See Alberts v. Schultz*, 1999-NMSC-015, ¶ 30, 126 N.M. 807, 975 P.2d 1279 (holding that a plaintiff does

18

not have the burden of demonstrating absolute certainty of causation "because the physician's malpractice has made it impossible to know how the patient would have fared in the absence of any negligence," and that the defendant "should not be able to avoid liability on the ground that it is uncertain what that outcome would have been" (internal quotation marks and citation omitted)). At the summary judgment stage of a proceeding, a plaintiff need only introduce evidence into the summary judgment record sufficient to create a dispute of fact for trial. Rule 1-056(E) NMRA (stating that the party opposing the motion for summary judgment must show "by affidavits or . . . otherwise . . . that there is a genuine issue for trial").

{35}    In response to Defendants' claim that a confirming echocardiogram was required before prostaglandin treatment could be administered, Plaintiffs point to the deposition testimony of their pediatric expert, Dr. Silver, which explicitly disputes this contention. In Dr. Silver's opinion, prostaglandin should be administered right away if a doctor thinks there is "even a remote chance" of a congenital heart defect in a newborn without waiting to confirm the diagnosis with further testing.

{36}    Defendants' claim that CMC had no prostaglandin on hand and, therefore, it could not have been administered more quickly than the more than five hours it took to transport Cain to El Paso is placed in dispute by the testimony of Dr. Sung's expert transport nurse, who testified that whenever her transport crew picked up a newborn, they brought prostaglandin with them.

{37} Finally, there was no evidence supporting Defendants' claim that Cain was transported as quickly as possible, or that there were no other alternatives to waiting for an ambulance if Cain's transport had been viewed as an emergency. Defendants' mere assertion, without citation to admissible evidence, is not sufficient to establish a prima facie case for purposes of summary judgment. *See Freeman v. Fairchild*, 2018-NMSC-023, ¶ 16, 416 P.3d 264 (defining a prima facie case as one supported by sufficient evidence "to raise a presumption of fact or establish the fact in question unless rebutted" (internal quotation marks and citation omitted)).

{38} Defendants additional "undisputed facts" therefore do not provide an alternative ground for a grant of summary judgment.

**CONCLUSION**

{39} For the reasons described above, we reverse the district court's order granting summary judgment in favor of Dr. Reuter and Online Radiology. We remand for proceedings consistent with this opinion.

{40} **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

20

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**KATHERINE A. WRAY, Judge**

21