The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 18, 2022

No. A-1-CA-38569

**DIANE GARRITY, as Court-Appointed Guardian Ad Litem for ABRAHAM RIDER, a minor,**

Plaintiff,

and

**CHRISTOPHER RIDER and YOLANDA RIDER, Husband and Wife, individually,**

Plaintiffs-Appellants,

v.

**CHRISTOPHER DRISKILL, M.D. and LEA REGIONAL HOSPITAL, LLC d/b/a LEA REGIONAL MEDICAL CENTER,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

The Hemphill Firm, P.C.
Linda G. Hemphill
Leigh Messerer

Emma D. B. Weber
Santa Fe, NM

Rothstein Donatelli LLP
Alicia C. Lopez
Albuquerque, NM

for Appellants

Atwood, Malone, Turner & Sabin
Lee M. Rogers Jr.
Carla Neusch Williams
Quincy J. Perales
Roswell, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellee Christopher Driskill, M.D.

Serpe, Jones, Andrews, Callender & Bell, PLLC
Randall Jones
Kelsey A. Leiper
Houston, TX

for Appellee Lea Regional Hospital, LLC d/b/a/ Regional Medical Center

## OPINION

**BOGARDUS, Judge.**

{1} Christopher and Yolanda Rider (Parents) appeal the district court's order dismissing as time-barred their claim for loss of consortium arising from injuries sustained by their minor child (Child) due to alleged medical malpractice. We conclude that because Parents' claim was filed within the time period prescribed for

filing Child's medical malpractice claim, Parents' claim was timely. Accordingly, we reverse.

**BACKGROUND**

{2}    The background to our analysis is comprised of the well-pled facts in the complaint, which we accept as truthful for purposes of reviewing the district court's ruling on Defendants' motion to dismiss. *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶ 2, 397 P.3d 1279. On September 6, 2013, Child sustained injuries during the course of his birth and delivery at Lea Regional Medical Center (LRMC). As a result of allegedly negligent medical care provided by Child's doctor, Christopher Driskill, Child suffered a brachial plexus injury to his shoulder causing scapular winging, weakness, and difficulty with arm positioning as well as additional injury resulting in developmental delays, including learning disabilities and speech defects.

{3}    Approximately five years later, on October 29, 2018, Child's guardian ad litem and Parents (collectively, Plaintiffs) filed a complaint, asserting various claims. Child's guardian ad litem brought several claims, including claims for negligent medical care against Dr. Driskill, his employer, Premier OBGYN, LLC

(Premier),[1] and LRMC (collectively, Defendants). Parents' sole claim in the complaint was for loss of consortium against all Defendants.

{4}     The district court granted Defendants' Rule 1-012(B)(6) NMRA motion to dismiss Parents' loss of consortium claim, concluding Parents brought their claim outside the three-year limitations period under both the Medical Malpractice Act's (MMA) statute of repose, NMSA 1978, § 41-5-13 (1976, amended 2021),[2] and the general statute of limitations for personal injuries, NMSA 1978, § 37-1-8 (1976). Parents appeal.

## DISCUSSION

### I.     Standard of Review

{5}     We review the dismissal of Parents' claim for loss of consortium damages under Rule 1-012(B)(6) de novo. *See Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 8, 134 N.M. 492, 79 P.3d 836 (noting whether a motion to dismiss under Rule 1-012(B)(6) was properly granted is a question of law). To address Parents' loss of consortium claim, we must construe Section 37-1-8, NMSA 1978, Section 37-1-10 (1975), and Section 41-5-13 as they apply to the facts

---

[1]Premier is no longer a party to this appeal. Upon stipulation of the parties and upon agreement that Premier be dismissed as a party in the district court, this Court dismissed Premier from this appeal.

[2]The Legislature approved multiple amendments to the MMA in the 2021 legislative session, which took effect January 1, 2022. *See* NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2021). All citations in this opinion to the MMA or any of its provisions refer to the MMA as it existed before 2022.

of this case. We review such matters de novo. *See Bd. of Comm'rs of Rio Arriba Cnty. v. Greacen*, 2000-NMSC-016, ¶ 4, 129 N.M. 177, 3 P.3d 672 ("This is primarily a matter of statutory construction and thereby concerns a pure question of law, subject to de novo review."); *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960 ("We review de novo the [district] court's application of the law to the facts in arriving at its legal conclusions.").

## II.     Statutes at Issue

{6}     Because Parents brought their loss of consortium claim against both qualified and nonqualified health care providers, two separate statutes are at issue on appeal: the MMA's statute of repose, Section 41-5-13, and the general statute of limitations for personal injuries, Sections 37-1-8 and 37-1-10. Defendant Driskill is a qualified health care provider pursuant to Section 41-5-5(C) of the MMA and is therefore entitled to the MMA's benefits. *See id.* (defining the qualifications needed for health care providers to qualify under the MMA and explaining that health care providers that do not meet the qualifications under that "section shall not have the benefit of any of the provisions of the [MMA] in the event of . . . malpractice claim[s] against [them]"). As a result, Section 41-5-13 is controlling as to whether Parents' loss of consortium claim against Defendant Driskill was timely filed. *See Moncor Tr. Co. ex rel. Flynn v. Feil*, 1987-NMCA-015, ¶ 6, 105 N.M. 444, 733 P.2d 1327 ("Under the [MMA] . . . Section 41-5-13 is controlling as to whether an action grounded upon

4

a claim of medical malpractice has been timely filed."). Section 41-5-13 provides, in relevant part:

> No claim for malpractice arising out of an act of malpractice . . . may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred *except that a minor under the full age of six years shall have until his ninth birthday in which to file*.

(Emphases added.)

{7}     As for Parents' claim against Defendant LRMC, which is not a health care provider as defined in the MMA, the parties agree that Sections 37-1-8 and -10 control whether Parents' loss of consortium claim was timely filed. Section 37-1-8 provides in relevant part that "[a]ctions must be brought . . . for an injury to the person . . . within three years," but Section 37-1-10 provides an exception allowing a minor one year from his or her eighteenth birthday within which to sue. *See Gomez v. Chavarria*, 2009-NMCA-035, ¶ 7, 146 N.M. 46, 206 P.3d 157. We refer to the exceptions for minors provided by Sections 41-5-13 and 37-1-10 as "minority tolling provisions." *See Maestas v. Zager*, 2005-NMCA-013, ¶ 22, 136 N.M. 764, 105 P.3d 317 (referring to the Tort Claims Act's minority tolling provision), *rev'd on other grounds*, 2007-NMSC-003, ¶ 1, 141 N.M. 154, 152 P.3d 141.

{8}     It is undisputed that Parents brought their loss of consortium claim outside the general three-year limitations period provided by Sections 41-5-13 and 37-1-8, but during Child's minority as defined in both minority tolling provisions at issue. Thus,

the sole issue on appeal is whether a parent's claim for loss of consortium in a medical malpractice case is tolled alongside the minor's claim from which it is derived, pursuant to the minority tolling provisions of Sections 41-5-13 and 37-1-10.

## III.    The Parties' Arguments

{9}    Defendants argue that a parent's claim for loss of consortium should not be so tolled. They contend the plain language of the minority tolling provisions at issue provides no exception to the general three-year limitations period for a parent's loss of consortium claim. Defendants urge us to apply the principle of strictly construing exceptions to limitations periods and follow our precedent applying this principle. Defendants also argue that, because loss of consortium claims are independent actions, they can be brought separately from the underlying injury claim.

{10}    Parents argue the minority tolling provisions' silence as to their applicability to loss of consortium claims makes the statutes ambiguous since loss of consortium claims did not exist when the tolling provisions were enacted. Likewise, Parents contend the cases upon which Defendants rely to support a strict construction of the minority tolling provisions at issue are of limited value because loss of consortium claims did not exist when those cases were decided. Parents argue that in light of later-developed loss of consortium precedent, refusing to extend the minority tolling provisions at issue to a parent's loss of consortium claim would lead to illogical

results and frustrate public policies favoring judicial economy and avoiding piecemeal litigation.

{11} For the reasons we discuss, we conclude that a parent's claim for loss of consortium in a medical malpractice case is tolled alongside the minor's claim from which it is derived when such claims are brought in the same cause of action. Because our conclusion applies to the minority tolling provisions of Sections 41-5-13 and 37-1-10, and because our reasoning applies equally to both, we do not separately analyze each statute.

## IV. Legislative Intent

{12} "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *El Paso Elec. Co. v. N.M. Pub. Regul. Comm'n*, 2010-NMSC-048, ¶ 7, 149 N.M. 174, 246 P.3d 443 (internal quotation marks and citation omitted); *accord Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 15, 149 N.M. 162, 245 P.3d 1214 ("This Court's primary goal when interpreting statutes is to further legislative intent."). We "us[e] the plain language of the statute as the primary indicator of legislative intent." *State v. Willie*, 2009-NMSC-037, ¶ 9, 146 N.M. 481, 212 P.3d 369 (alteration, internal quotation marks, and citation omitted). However, "[i]f the plain meaning of the statute is doubtful, ambiguous, or if an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, we

7

will construe the statute according to its obvious spirit or reason." *Id.* (alteration, internal quotation marks, and citation omitted).

{13}     We start with the plain language. As discussed, Defendants contend the plain language of Sections 37-1-8, -10 and 41-5-13 provides no exception to the three-year limitation for a parent's loss of consortium claim so that the language of these statutes is unambiguous. In contrast, Parents argue both that the statutory text is ambiguous and that absurd and unjust results would ensue from Defendant's plain meaning interpretation.

{14}     If we were to examine the text of Sections 37-1-8, -10, and 41-5-13 in isolation, Defendants' strict construction argument might be persuasive. We, however, do not believe it is appropriate to take such a view of the statutory text given the circumstances in this case. Our Legislature last amended Section 37-1-10 in 1975 and Section 37-1-8 in 1976, and enacted Section 41-5-13 in 1976. Loss of consortium claims, however, were not recognized until 1994. *See Romero v. Byers*, 1994-NMSC-031, ¶¶ 13, 24, 117 N.M. 422, 872 P.2d 840 (recognizing a claim for loss of spousal consortium). It is reasonable to conclude, therefore, that the Legislature did not intentionally fail to address loss of consortium claims in these statutes. *See Wilschinsky v. Medina*, 1989-NMSC-047, ¶ 25, 108 N.M. 511, 775 P.2d 713 ("[A] specific cause of action [later] recognized by [our Supreme Court] did not exist in 1976. Therefore, the [L]egislature did not intentionally fail to address this

8

issue."). Moreover, as we later discuss, we agree with Parents that Defendants' construction would lead to illogical and unjust results that the Legislature did not intend. *See State v. Bennett*, 2003-NMCA-147, ¶ 10, 134 N.M. 705, 82 P.3d 72 (departing from the plain meaning to avoid "an absurdity that the [L]egislature could not have intended" (internal quotation marks and citation omitted)). Accordingly, we look beyond the plain meaning of the statutory text to discern legislative intent. *See id.*; *Wilschinsky*, 1989-NMSC-047, ¶ 26.

## A. Purpose of the MMA

{15} In support of its interpretation of the language of Section 41-5-13 in particular, Defendant Driskill points out that the Legislature enacted the MMA to limit the liability of health care providers, and contends that expanding its minority tolling provision would undermine this purpose. *See* § 41-5-2 (1976) (repealed 2022).[3] ("The purpose of the [MMA] is to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico."). We are unpersuaded.

{16} The MMA's purpose was not solely to limit the liability of qualified health care providers. *See* § 41-5-2; *Montaño v. Frezza*, 2017-NMSC-015, ¶ 32, 393 P.3d 700 (noting one purpose of the MMA as promoting the health and welfare of the

---

[3]We are aware of the 2021 amendments to the MMA, including the repeal of Section 41-5-2, which took effect on January 1, 2022. However, as we previously noted, we rely on the law in effect prior to the 2021 Legislative session.

people of New Mexico by ensuring "that individuals receive adequate compensation for injuries caused by medical negligence"); *Baker v. Hedstrom*, 2013-NMSC-043, ¶¶ 17, 19, 309 P.3d 1047 (describing that the MMA created a "balanced scheme" to encourage health care providers to opt into the MMA by balancing benefits to providers and patients, and listing the benefits to patients). Moreover, expanding Section 41-5-13's minority tolling provision leaves unchanged many of the MMA's most significant limitations on the liability of qualified health care providers: the $200,000 personal liability limit; the $600,000 cap on damages; and the requirement that plaintiffs submit malpractice claims to the medical review commission for permission to sue the provider in district court. *See id.* ¶ 18 (reviewing the MMA's benefits to qualified health care providers). Finally, as we discuss below, expanding Section 41-5-13's minority tolling provision protects qualified health care providers from exposure to multiple lawsuits based on the same conduct. Accordingly, we conclude that tolling a parent's claim for loss of consortium alongside the minor's medical malpractice claim does not undermine the MMA's benefits for qualified health care providers, nor is it contrary to the purpose of the MMA.

**B.    Canons of Strict Construction**

{17}    Defendants next urge us to apply the principle of strictly construing exceptions to limitation periods. *See Regents of Univ. of N.M. v. Armijo*, 1985-NMSC-057, ¶ 5, 103 N.M. 174, 704 P.2d 428 ("Generally the right of action is

10

favored over the right of limitation. Exceptions, however, to statutes of limitations are strictly construed in New Mexico."). Defendants contend that the Legislature must be presumed to have been aware of this longstanding principle of strict construction when it enacted the statutes at issue, and that we should follow our precedent applying this principle. *See Moncor Tr. Co.*, 1987-NMCA-015, ¶¶ 8, 13, 16 (noting the principle of strictly construing exceptions to statutes of limitations and concluding that Section 41-5-13's minority tolling provision "appl[ied] only to minors who suffer an alleged act of malpractice and not to minors who are beneficiaries under the Wrongful Death Act" in part because "minority disability saving a person from the operation of the statute of limitations is a personal privilege limited to the minor under the disability only and cannot confer rights on other persons asserting actions"); *accord Armijo v. Regents of Univ. of N.M.*, 1984-NMCA-118, ¶¶ 1-2, 15, 103 N.M. 183, 704 P.2d 437 (concluding that a parent's individual claims for pain and suffering and loss of companionship could not be "tacked on to the claims of the infant, thereby avoiding the operation of the two-year limitation period [under the Tort Claims Act]" because "[a] disability, such as minority, which saves one from the operation of a limitation statute is a *personal* privilege of the person under the disability only"), *rev'd in part on other grounds*, 1985-NMSC-057, ¶ 1. We acknowledge *Moncor Tr. Co.*, 1987-NMCA-015, and *Armijo*, 1984-NMCA-118, suggest that the minority tolling provisions at issue do

11

not inure to the benefit of Parents' loss of consortium claim. In light of later precedent regarding loss of consortium claims, however, we conclude these authorities are not controlling.

{18} As an initial matter, precedent defining loss of consortium claims did not exist when *Moncor Tr. Co.* and *Armijo* were decided because loss of consortium was not yet recognized as a cause of action. Further, we conclude that strictly construing the minority tolling provisions at issue, as *Moncor Tr. Co.* and *Armijo* suggest, would be inconsistent with this later-developed precedent regarding loss of consortium.[4] Specifically, as we explain, refusing to extend the minority tolling provisions at issue to a parent's loss of consortium claim in a medical malpractice case would lead to multiple lawsuits and the possibility for inconsistent decisions, contrary to our precedent requiring joinder of a parent's loss of consortium claim with the child's negligence action and at odds with the policies underlying this joinder requirement.[5]

## C. Subsequent Development of Loss of Consortium Law

---

[4]Insofar as Defendant Driskill argues that the Legislature's inaction in the face of this later development in loss of consortium law is evidence of legislative intent to adopt its reading of the MMA's minority tolling provision, we are unpersuaded. *See Garcia v. Schneider, Inc.*, 1986-NMCA-127, ¶ 11, 105 N.M. 234, 731 P.2d 377 ("While a number of decisions have held that legislative inaction following a judicial interpretation of a statute affords some evidence that the [L]egislature intends to adopt the interpretation, legislative inaction has been called a weak reed upon which to lean and a poor beacon to follow in construing a statute." (alteration, internal quotation marks, and citation omitted)).

[5]To the extent language in *Moncor Tr. Co.*, 1987-NMCA-015, and *Armijo*, 1984-NMCA-118, conflicts with our decision, those cases are no longer good law.

**{19}** In *Fernandez v. Walgreen Hastings Co.*, our Supreme Court followed other jurisdictions in "*requiring* joinder of a parent's or grandparent's loss of consortium claim with the child's negligence action." 1998-NMSC-039, ¶ 28, 126 N.M. 263, 968 P.2d 774 (emphasis added). The policy underlying the adoption of this joinder requirement was to prevent increased litigation and multiple claims that would otherwise result from filing a parent's or grandparent's loss of consortium claim separately from the child's underlying negligence action. *See id.* ("[The d]efendant's argument that recognition of a grandparents' claim for loss of consortium would lead to increased litigation and multiple claims is . . . easily solved by requiring joinder of [these claims].").

**{20}** In support of its decision to follow other jurisdictions in adopting this joinder requirement, the *Fernandez* court cited the Wisconsin Supreme Court's decision *Shockley v. Prier*, which likewise required "that the parent's [loss of consortium claim be] combined with that of the child for the child's personal injuries." 225 N.W.2d 495, 501 (Wis. 1975). Relying on *Shockley*'s requirement that a parent's loss of consortium claim be combined with the child's injury claim, the Wisconsin Supreme Court went on to decide the issue we face today in *Korth ex rel. Lukas v. Am. Fam. Ins. Co.*, 340 N.W.2d 494 (Wis. 1983). We find the Wisconsin Supreme Court's reasoning in *Korth* to be consistent with our precedent requiring joinder and therefore persuasive.

{21}     In *Korth*, an injured minor and her parents filed suit after the three-year statute of limitations for personal injuries had expired but during the child's minority. *Id.* at 495. Construing a substantially similar limitations provision, the Wisconsin Supreme Court concluded that since the parents' claim for loss of society and companionship and medical expenses was filed along with the minor's claims, the parents' claim was also entitled to the benefit of the statute tolling the period for filing the minor's claims. *See id.* In so concluding, the court relied on its precedent from *Shockley* requiring the parent's cause of action for loss of society and companionship to be brought in the same action as that of the minor's claim for personal injuries. *See id.* at 496-97. The court highlighted the policies underlying *Shockley*'s joinder requirement: protecting defendants from multiple litigation and inconsistent judgments, and protecting the public's interest in the prompt, complete and efficient settlement of controversies in one proceeding. *Id.* at 496. The court reasoned that applying the minor tolling provision to loss of consortium claims would encourage these policies underlying the joinder requirement and allow the minor or the minor's representative the benefits of a longer limitations period. *See id.* at 497.

{22}     The *Korth* court also reasoned that allowing the parents' claims to be filed during the period available to the minor applied a "fair and reasonable construction" to the statutes at issue. *Id.* While the court noted "statutes creating limitations . . .

14

should not be extended by judicial construction," *id.* (alteration omitted), it stated that were it to hold otherwise, its joinder requirement would mean that parents bringing a claim for loss of society and companionship would "of necessity" be forced to initiate the minor's claim within the general three-year limitations period, despite the minor tolling provision. *Id.* Finally, the court noted that granting parents the benefit of the minor tolling provision would not unduly burden defendants since they would have had to preserve evidence or maintain their readiness to defend the minor's claim. *Id.*

{23}     We likewise find persuasive a more recent case from the Rhode Island Supreme Court addressing whether that state's statute of limitations applicable to a minor's medical malpractice claim inured to the benefit of a parent's loss of consortium claim. *See Ho-Rath v. Rhode Island Hosp.*, 115 A.3d 938, 940, 951 (R.I. 2015). In *Ho-Rath*, the Rhode Island Supreme Court concluded that "a parent's claim for loss of consortium in a medical malpractice case should be tolled alongside the minor's claim from which it is derived." *Id.* at 950. In so concluding, the court relied on its precedent establishing that the parents' loss of consortium claims "must be joined with the child's claims if it is feasible to do so." *Id.* The court reasoned that "[t]he sound rationale for this joinder rule is to prevent duplicative litigation, multiple recoveries, and inconsistent results." *Id.*

**{24}** We find the reasoning from Wisconsin and Rhode Island supportive of the conclusion that a parent's claim for loss of consortium in a medical malpractice case is tolled alongside the minor's claim, pursuant to the minority tolling provisions at issue. This conclusion is consistent with our precedent "requiring joinder of a parent's . . . loss of consortium claim with the child's negligence action," and the policies underlying this precedent: protecting individuals from the burden of litigating multiple lawsuits, promoting judicial economy, and minimizing the possibility of inconsistent decisions. *Fernandez*, 1998-NMSC-039, ¶ 28; *see id.* (adopting the joinder requirement to prevent "increased litigation and multiple claims" that would result from filing a parent's or grandparent's derivative loss of consortium claims separately from the child's negligence action); *see also* Rule 1-019(A)(2)(b) NMRA (mandating, if feasible, joinder of a party claiming an interest relating to the subject of the action when his or her absence would "leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations"). In our view, this conclusion provides fairness to the parties—to the defendants by reducing multiple lawsuits and to the plaintiffs by ensuring that they are not foreclosed from bringing meritorious claims—and, importantly, promotes the policies of the MMA and the minority tolling provisions.

**{25}** Were we to conclude otherwise, a parent would need to bring his or her loss of consortium claim within the applicable three-year limitations period, yet—

16

pursuant to the minority tolling provisions at issue—a minor's malpractice claim could go forward separately years later. Such a scenario would increase the possibility of inconsistent decisions given that "a plaintiff who sues for loss of consortium damages must prove—as an element of loss of consortium damages— that the alleged tortfeasor caused the wrongful injury or death of someone who was in a sufficiently close relationship to the plaintiff." *Thompson*, 2017-NMSC-021, ¶ 14.

{26}     We acknowledge that *Fernandez*'s joinder requirement could in theory be upheld without extending the minority tolling provisions at issue to a parent's loss of consortium claim by obligating the minor's claim to be brought together with the parent's claim within the general three year limitations period. But requiring the minor to bring their claim within the general limitations period would render superfluous the minority tolling provisions at issue. *See Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must . . . be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)).

{27}     Moreover, extending the minority tolling provisions at issue to a parent's loss of consortium claim is consistent with New Mexico's "long tradition of interpreting laws carefully to safeguard minors." *Rider v. Albuquerque Pub. Schs.*, 1996-NMCA-090, ¶ 13, 122 N.M. 237, 923 P.2d 604; *see also Gomez*, 2009-NMCA-035, ¶ 10

17

("The intent of the Legislature in enacting Section 37-1-10 was to give minors a reasonable period of time after reaching majority within which to file an action."). Otherwise, a parent might feel compelled by *Fernandez*'s joinder requirement to bring the minor's claim within the general three-year limitations period to preserve the parent's derivative loss of consortium claim.[6] *Accord Korth*, 340 N.W.2d 494 at 497 (noting that, in light of its joinder requirement, were it to hold that the minor tolling provision at issue did not inure to the parents' benefit, parents claiming loss of society and companionship would "of necessity" be forced to initiate the minor's claim within the general three-year limitations period). Such a scenario would frustrate rather than facilitate the purposes of minority tolling provisions. *See Regents*, 1985-NMSC-057, ¶ 7 ("Minority savings clauses are enacted to allow time for the full scope of a child's injury to become apparent, to enable the child to become competent to testify, or to allow the child to act for himself after the disability has been removed."); *In re Portal*, 2002-NMSC-011, ¶ 5, 132 N.M. 171, 45 P.3d 891 ("Statutes are to be read in a way that facilitates their operation and the achievement of their goals." (internal quotations marks and citation omitted)).

---

[6]Defendants point out that the district court has the power to stay loss of consortium claims in cases in which the claimant knows he or she has a claim but does not yet know the full extent of his or her damages. *See Belser v. O'Cleireachain*, 2005-NMCA-073, ¶ 3, 137 N.M. 623, 114 P.3d 303 (stating that "a district court has the discretion to grant and lift a stay of proceedings[]" as part of the court's "inherent authority . . . to manage the cases before it"). We view this discretionary power as insufficient in light of *Fernandez*'s joinder requirement.

{28} Defendants disagree about the scope of *Fernandez*'s joinder requirement, arguing that a parent's loss of consortium claim need not be joined with a child's medical malpractice claim. Defendants contend Parents' reliance on *Fernandez*'s joinder requirement ignores *Thompson*, which allows loss of consortium claims to be brought separately from the underlying injury claim. We do not agree that *Thompson* is controlling under the circumstances of this case, or that it conflicts with the joinder requirement set forth in *Fernandez*.

{29} In *Thompson*, a parent was killed, but the parent's estate did not sue for wrongful death damages. 2017-NMSC-021, ¶ 1. The plaintiffs, parent's minor children, sued for loss of consortium damages under the New Mexico Tort Claims Act. *Id.* ¶¶ 1, 5. The relevant issue before our Supreme Court was: "May the minor children of a parent whom they allege was wrongfully shot and killed by a law enforcement officer . . . bring their lawsuit [for loss of consortium damages] even if the parent's estate did not sue for wrongful death damages?" *Id.* ¶ 1.

{30} The Court held that the "[p]laintiffs in this case may bring the claim for loss of consortium damages independent of the underlying battery claim." *Id.* ¶ 18. The Court reasoned that "claims for loss of consortium damages are independent," and stated that "[a]lthough claims for loss of consortium damages derive from injury to another, the claimant has also suffered a direct injury for which he or she may seek recovery separately from the underlying tort." *Id.* ¶¶ 16, 18. "The direct injury

19

alleged by a loss of consortium claimant is one to a relational interest with another who was physically injured." *Id.* ¶ 16. Thus, the Court stated, "A derivative claim for loss of consortium damages need not be brought along with the underlying tort claim because loss of consortium claimants suffer a direct injury separate from the physical injury to another." *Id.* ¶ 17.

{31} We do not view *Thompson*'s holding or reasoning as altering *Fernandez*'s joinder requirement or foreclosing its application in the present case. *Fernandez*'s joinder requirement is necessarily limited to instances in which a loss of consortium claim is brought along with the claim for the underlying tort injury. *See Fernandez*, 1998-NMSC-039, ¶ 28 (citing *Ueland v. Reynolds Metals Co.*, 691 P.2d 190, 193-94 (Wash. 1984) (en banc)), for the proposition that a "child's claim for loss of consortium of parent [must] be joined with [a] parent's underlying claim *whenever possible*." (emphasis added)). In *Thompson*, by contrast, the underlying tort action was never pursued. 2017-NMSC-021, ¶ 1. *Thompson*'s holding does not address the scenario contemplated in *Fernandez*, and at issue here, in which both the loss of consortium claim and the underlying tort action were brought. And although "a minor child c[an] pursue a claim for loss of consortium damages separate from an underlying wrongful death claim," *Id.* ¶ 17 (citing *State Farm Mut. Auto. Ins. Co. v. Luebbers*, 2005-NMCA-112, ¶ 37, 138 N.M. 289, 119 P.3d 169), neither *Fernandez* nor this case presents such a scenario.

## CONCLUSION

{32}	In sum, we conclude—based on our construction of the applicable statutes, in view of our precedent requiring joinder of a parent's loss of consortium claim with the child's negligence action and the policies inherent in that precedent, and our long tradition of interpreting laws carefully to safeguard minors—that a parent's claim for loss of consortium in a medical malpractice case is tolled alongside the minor's claim from which it is derived, pursuant to the minority tolling provisions of Sections 41-5-13 and 37-1-10.

{33}	For the foregoing reasons, we reverse the dismissal of Parents' loss of consortium claim and remand to the district court for proceedings consistent with this opinion.

{34}	**IT IS SO ORDERED.**


_____

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**


_____

**JENNIFER L. ATTREP, Judge**


_____

**JACQUELINE R. MEDINA, Judge**