694 P.2d 1359

**Mr. and Mrs. Ross Lee MACKEY, Jr., Individually, and Mr. Ross Lee Mackey, Jr., as the Personal Representative of his daughter, Clara Mae Mackey, Deceased, Plaintiffs-Appellants,**

v.

**Dr. Edward B. BURKE, Dr. R.E. Smith, Jr., Lea Regional Hospital, Norte Vista Medical Clinic, and Dr. James Robert Ray, Defendants-Appellees.**

No. 7273.

Court of Appeals of New Mexico.

March 22, 1984.

Certiorari Quashed Jan. 22, 1985.

Steven E. Schonberg, Paul Livingston, Steven E. Schonberg, P.C., Albuquerque, for plaintiffs-appellants.

M. Richard Beitler, Ellen G. Thorne, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees Norte Vista Medical Clinic and Dr. Ray.

Rod M. Schumacher, Atwood, Malone & Mann, P.A., Roswell, for defendant-appellee Lea Regional Hosp.

R.E. Richards, R.E. Richards, P.A., Hobbs, for defendant-appellee Dr. Smith.

Ronald Segel, Sutin, Thayer & Browne, P.C., Albuquerque, for defendant-appellee Dr. Burke.

## OPINION

HENDLEY, Judge.

On September 16, 1982, plaintiffs "[I]ndividually and as the Natural Parents of Clara Mae Mackey, Deceased," filed this action for compensatory and punitive damages based on the alleged "Medical and Hospital Malpractice, Negligence, and Outrageous Conduct" concerning treatment of their infant daughter prior to her death on October 16, 1979. An amended complaint, filed October 8, 1982, characterized plaintiffs in the same way as the complaint filed September 16, 1982. Thus, the first amended complaint contributes nothing to the issues to be decided. On February 23, 1983, plaintiff filed a second amended complaint. which added as a party plaintiff, "Mr. Ross Lee Mackey, Jr., as the Personal Representative of his daughter Clara Mae Mackey, Deceased." He had been appointed sometime after December 20, 1982, and before January 4, 1983. After a hearing on defendants' motion to dismiss, the court entered summary judgment for defendants because plaintiffs' second amended complaint did not relate back to earlier defective complaints and was thus barred by the three-year limitations period for medical malpractice and wrongful death actions. Plaintiffs' appeal concerns two issues: 1) What is the legal effect of a medical malpractice/wrongful death action, based on an infant's death, being brought by the parents of the deceased infant as individuals in their capacity as natural parents? 2) If it is improper for parents to bring such action individually, can an amendment after the expiration of the statute of limitations adding the father as personal representative relate back and save the action from dismissal?

Plaintiffs' basic allegation is that had "proper medical and hospital care been provided, Clara Mae Mackey would not have died." For opinion purposes we will assume that the complaint pled both an action for medical malpractice and wrongful death.

The Medical Malpractice Act, NMSA 1978, Sections 41–5–1 to –28 (Repl.Pamp. 1982), describes the right of action at Section 41–5–4, which reads in part: "A patient *or his representative* having a malpractice claim for bodily injury *or death* may file a complaint in any court of law having requisite jurisdiction \* \* \*." (Emphasis added.) An action for wrongful death as described in NMSA 1978, Section 41–2–1 (Repl.Pamp.1982), *"shall* be brought *by and in the name* or names *of the personal representative* or representatives of such deceased person \* \* \*." NMSA 1978, § 41–2–3 (Repl.Pamp.1982) (emphasis added). The different language of these statutes must be construed since plaintiffs' contentions relate to the validity of plaintiffs' initial complaint, filed less than three years after their daughter's death.

## Medical Malpractice Act

"Representative" is not defined in the definitional section of the Medical Malpractice Act, Section 41–5–3; its definition in this context is not discussed in any New Mexico appellate opinion. Defendants infer that "representative" in the Act equates with "personal representative." Plaintiffs state, but do not present an argument, that "there is no requirement of any type of personal representation under the New Mexico Medical Malpractice Act \* \*."

"Representative" in Section 41–5–4 has a broader meaning than "personal representative" in order to cover situations where the patient is not dead, but is rendered incompetent or is a minor and, hence, unable to pursue the suit personally. *See* NMSA 1978, Civ.P.R. 17(c) (Repl.Pamp. 1980). If the patient is not dead and, as in this case, was a minor, the "representative" of Section 41–5–4 who may sue for the malpractice is identified in Civ.P. Rule 17(c)—a general guardian, or other like fiduciary, a next friend or guardian ad litem. We are not concerned with this type of "representative" because the infant is dead. *See Garcia v. Middle Rio Grande Conservancy District,* 99 N.M. 802, 664 P.2d 1000 (Ct.App.1983).

Earlier in this opinion we assumed that the complaint pled both an action in medical malpractice and wrongful death. The original and two amended complaints alleged malpractice that caused death. Nothing in these complaints suggests a claim for damages unrelated to the death. Damages may be recovered in a wrongful death action "for pain and suffering, and for medical and related care, between the time of injury and death \* \* \*." *Stang v. Hertz Corporation,* 81 N.M. 348, 467 P.2d 14 (1970). Recovery for these items of damage may be had in a case involving wrongful death from malpractice between the time of the malpractice and death. Our point is that the damage claims in this case involve damages recoverable in the wrongful death action. The parents do not seek damages for their own injury and expense.

This being a wrongful death suit, the "representative" of Section 41–5–4 who may bring suit for the death means the personal representative of Section 41–2–1.

## Wrongful Death Act

Neither party disputes the requirement that an action for wrongful death is to be brought by the "personal representative." The question is what the term means. Within the New Mexico Probate Code definition section, NMSA 1978, Section 45–1–201(A)(29) (Cum.Supp.1983), " 'personal representative' includes an executor, administrator, successor personal representative, special administrator and persons who perform substantially the same function under the law governing their status[.]" However, "personal representative" for the purpose of a wrongful death action, is not synonymous with the parameters of the Probate Code. *See Henkel v. Hood,* 49 N.M. 45, 156 P.2d 790 (1945).

*Henkel,* which preceded the adoption of our current Probate Code, NMSA 1978, Sections 45–1–101 to 45–7–401 (Orig.Pamp.

and Cum.Supp.1983), construed an earlier compilation of Section 41–2–3 and determined that the authority of the "personal representative" to bring a wrongful death action "flows from the wrongful death statute itself and not from the probate, or estate, laws of this * * * state * * *." *Henkel.* In *Henkel,* a husband's action for the wrongful death of his wife was dismissed by the lower court because he was not the proper party to sue. He had been appointed the "community administrator" of the estate in Texas. A "community administrator" had authority to dispose of the community property, not the separate property. Defendants argued on appeal that the limitation on the husband's power over the estate made it impossible for him to act as the personal representative in a wrongful death action under New Mexico law.

Our Supreme Court disagreed. 1) Plaintiff's powers as administrator of the estate were unrelated to his alleged authority as a personal representative since that power flows from the wrongful death statutes, not probate law. 2) A wrongful death action has no relation to the estate. 3) The Legislature assigned the right of action to the personal representative merely because someone had to be designated, not because such action would automatically have fallen within his duties. 4) "The term 'personal representative' is used simply to designate the agency, the trustee, the person, who may prosecute this particular character of statutory action." 5) The personal representative is a "nominal party" in the sense that he acts as a trustee for the statutory beneficiaries, and not in any capacity for the estate, in pursuing the wrongful death action.

Cases after *Henkel* reaffirm that only the personal representative is able to bring an action for wrongful death. *Varney v. Taylor,* 77 N.M. 28, 419 P.2d 234 (1966); *Baca v. Baca,* 71 N.M. 468, 379 P.2d 765 (1963); *Kilkenny v. Kenney,* 68 N.M. 266, 361 P.2d 149 (1961); *Dominguez v. Rogers,* 100 N.M. 605, 673 P.2d 1338 (Ct.App.1983); *Stang v. Hertz Corporation,* 81 N.M. 69, 463 P.2d 45 (Ct.App.1969).

Cases after *Henkel* make clear that the importance of the personal representative in the statute is to distinguish a person from the statutory beneficiaries, to set someone apart from the beneficiaries, and enable that person to prosecute the wrongful death suit. In *Hall v. Stiles,* 57 N.M. 281, 258 P.2d 386 (1953), defendants, on appeal, urged that the trial court had erred in allowing a second wife and child of the deceased to intervene in the wrongful death action brought by the administrator. The court, on appeal, agreed that the only person entitled to bring a wrongful death action is the administrator, but the court refused to find that the intervention was error. Defendants had created the error when they insisted at a pretrial conference "that all parties claiming injury" be named as plaintiffs. *Hall.* Status as a potential statutory beneficiary is not the test for authority to bring a wrongful death action. If each potential beneficiary was considered a personal representative, the suits could be unending and contradictory. The Legislature has given the personal representative power to sue as "the statutory trustee for the discoverable and identifiable beneficiaries named in the statute." *Dominguez.*

### The Complaint

Suit was not brought by the personal representative until February 23, 1983. What is the effect of having an improper party prior to that time?

Plaintiffs attempt to avoid the relation back limitations stated in *DeVargas v. State ex rel. N.M. Dept. of Corrections,* 97 N.M. 447, 640 P.2d 1327 (Ct.App.1981), and *Mercer v. Morgan,* 86 N.M. 711, 526 P.2d 1304 (Ct.App.1974), by distinguishing them as cases which "involved attempts to change the defendant parties." (Emphasis omitted.) They overlook the problem of the initial complaint's deficiency. Defendants focus on the initial complaint as a nullity because "brought by parties lacking capacity to sue." Another way to state

this is that plaintiffs in their capacity as natural parents lacked standing to sue.

Plaintiffs' argument focuses on the Rules of Civil Procedure to persuade this Court to follow the liberal rules of pleading and avoid technicalities. In addition to NMSA 1978, Civ.P. Rule 15(c) (Repl.Pamp. 1980), plaintiffs point to NMSA 1978, Civ.P. Rule 9 (Repl.Pamp.1980), and Civ.P. Rule 17.

■ Plaintiffs misread the liberality of Rule 9(a) which provides that a plaintiff need not aver capacity to sue or be sued. The rule does not excuse a plaintiff who lacks capacity; once capacity is challenged, a plaintiff must show capacity. *Cf.* 2A J. Moore & J. Lucas, *Moore's Federal Practice* § 9.02 (2d ed.1983) (Supp.1983–84). (Our Civ.P. Rule 9(a) is the same as the federal rule.) After plaintiffs filed the original complaint (9/16/82) and the first amended complaint (10/8/82), both of which alleged their capacity to bring suit as the natural parents, defendants challenged plaintiffs' capacity. Dr. Burke raised this affirmative defense in his answer: "Plaintiffs lack standing or capacity to bring this action, and the action is therefore a nullity and should be dismissed with prejudice." In its answer to the first amended complaint, the hospital raised the affirmative defense that "[p]laintiffs are not properly authorized to bring this action * * *." Other motions for dismissal or summary judgment followed over the approximately four months before plaintiffs filed the second amended complaint adding the father as personal representative to the plaintiffs. Plaintiffs were on notice several months before its expiration that their lack of capacity was challenged.

Civ.P. Rule 17 reads in part:

(a) **Real party in interest.** Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust ... or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought * *. Where it appears that an action, by reason of honest mistake, is not prosecuted in the name of the real party in interest, the court may allow a reasonable time for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Plaintiffs make contradictory vague arguments from this rule. They argue: 1) substitution of the father as personal representative should be allowed because of an honest mistake; 2) the Mackey parents "were, and continue to be, the real parties in interest * * *."

■ 1) The language of Rule 17(a) indicates that the court has discretion in allowing a plaintiff to correct an honest mistake in failing to prosecute the action in the name of the real party in interest. Plaintiffs did not, in the trial court, argue that failure of the personal representative to bring suit was an honest mistake; their position was that, as parents, they were the real party in interest. The trial court was never alerted to an "honest mistake" argument. *See* NMSA 1978, Civ.App.R. 11. Nevertheless, the honest mistake argument, in this appeal, is without merit. They sat on their right to ask the court to exercise its discretion under Rule 17(a) until it was too late due to the expiration of the statute of limitations.

■ 2) The enumeration clause beginning with "but an executor," is interpreted as making those listed real parties in interest. *Iriart v. Johnson*, 75 N.M. 745, 411 P.2d 226 (1965). Therefore, the personal representative in the wrongful death statute is the real party in interest. The question remains whether the parents are real parties in interest.

The test to determine a real party in interest is given in *L.R. Property Management, Inc. v. Grebe*, 96 N.M. 22, 627 P.2d 864 (1981). "A real party in interest is 'determined by whether one is the owner of the right being enforced and is in a position

to discharge the defendant from the liability being asserted in the suit.'" 96 N.M. at 23, 627 P.2d 864, quoting from *Jesko v. Stauffer Chemical Company*, 89 N.M. 786, 558 P.2d 55 (Ct.App.1976). *L.R. Property* involved the breach of a commercial lease by defendants-appellants who had signed the lease with one company and were then sued by a second company which claimed that it was the successor in interest to the first. One of the issues raised on appeal was whether the plaintiff second company was the real party in interest. The Supreme Court reversed the trial court after reviewing the evidence in light of the above test.

The result of applying the test here is determined by the wrongful death statute which grants the right of action to the personal representative. Plaintiffs, as parents of the deceased, did not have the right to enforce this action.

Plaintiffs' procedural arguments obscure the more simple resolution of the issue of the effect of failure to file as parties authorized by the statutes. In *Romero v. Railroad*, 11 N.M. 679, 72 P. 37 (1903), a wrongful death action, the defendant railroad interposed a demurrer to plaintiff's complaint. The action was brought by the administrator of the deceased's estate. The appellate court affirmed the trial court's order sustaining the demurrer after determining that no right of action existed in the estate administrator based on the statute which at that time specified relatives of the deceased entitled to file an action. The demurrer in *Romero* tested the legal sufficiency of the complaint and dismissal was affirmed because "[t]here was an absolute want of authority in the plaintiff to sue in a representative capacity, as [the statute] excludes representatives by omitting them and specifically designating others." *Romero*. In the same way, plaintiffs' original complaint was legally insufficient because the parents were not authorized to bring suit.

**Relation Back**

The limitation period of the Medical Malpractice Act, Section 41–5–3(C), controls in this case. As stated in *Armijo v. Tandysh*, 98 N.M. 181, 646 P.2d 1245 (Ct.App.1981):

Section 41–5–3(C), N.M.S.A. 1978, defines a malpractice claim as including "any cause of action arising in this state against a health care provider * * * whether the patient's claim or cause of action sounds in tort or contract, and includes but is not limited to actions based on battery or wrongful death". The specific inclusion of a wrongful death claim within the definition of a malpractice claim makes the limitation period of § 41–5–13, supra, applicable to plaintiff's claim. The reason is that this specific inclusion controls over the general limitation period for a wrongful death claim. *Hopper v. Board of County Commissioners*, 84 N.M. 604, 506 P.2d 348 (Ct.App.1973).

We discuss whether the doctrine of relation back applies. Discussion of Civ.P. Rule 15(c) is based on our holding that the statute of limitations had expired by the time the second amended complaint adding the father as personal representative was filed on February 23, 1983. Because the time for filing was over, the second amended complaint fails unless it can come within Rule 15(c) which allows for relation back in certain circumstances. If the original complaint is a nullity, there can be no relation back under *DeVargas* and *Mercer*. Since the original complaint is a nullity, plaintiffs' arguments on application of Rule 15(c) are irrelevant. It is a nullity for the reason that the natural parents lacked capacity to sue. Therefore, it was as if no action had been brought within the statutory period allowed by law—three years.

Affirmed. Plaintiffs shall bear their appellate costs.

IT IS SO ORDERED.

DONNELLY, C.J., and WOOD, J., concur.