IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMCA-005

Filing Date: January 27, 2025

No. A-1-CA-40770

MARC GRANO, as Personal
Representative of the ESTATE OF
CYNTHIA CATON; HARRY CATON;
SEAN CATON; and AARON CATON,

      Plaintiffs-Appellants,

v.

JULIA KEATING, M.D. and DR.
JEFFREY HEBERT,

      Defendants-Appellees,

and

PRIMARY CARE OF NEW MEXICO,
LLC; HEALTHCARE RESOURCES, LLC;
QUALITY HEALTH MANAGEMENT, LLC;
QHM, LLC; QUALITY HEALTH MANAGEMENT,
LLC (FL); LOVELACE HEALTH SYSTEMS,
INC.; ARDENT HEALTH PARTNERS, LLC
d/b/a ARDENT HEALTH SERVICES;
ARDENT LEGACY HOLDINGS, INC.;
ARDENT LEGACY ACQUISITIONS, INC.;
AHS LEGACY OPERATIONS, LLC;
AHS MANAGEMENT COMPANY, INC.;
AHS NEW MEXICO HOLDINGS, INC.; and
ZIA DIAGNOSTIC IMAGING, LLC,

      Defendants.

APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY
ABIGAIL ARAGON, District Court Judge

Law Office of James H. Wood, P.C.
Zacary E. Wilson-Fetrow
James H. Wood

Albuquerque, NM

for Appellants

Hinkle Shanor LLP
Kathleen Wilson
Hari-Amrit Khalsa
Albuquerque, NM

for Appellee Julia Keating, M.D.

Lewis Brisbois Bisgaard & Smith
Karie J. Valentino
Julia H. Purdy
Albuquerque, NM

for Appellee Dr. Jeffery Hebert

**OPINION**

**IVES, Judge.**

{1}     The statute of repose in the Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2023),[1] generally requires a plaintiff to bring a "claim for malpractice . . . against a health care provider . . . within three years after the date that the act of malpractice occurred" or that claim is time-barred. Section 41-5-13. However, our Supreme Court has recognized that due process requires an exception to this general rule—an exception that extends the time to file claims that accrue late in the repose period. *Cahn v. Berryman*, 2018-NMSC-002, ¶¶ 16, 20-21, 408 P.3d 1012; *see* N.M. Const. art. II, § 18; U.S. Const. amend. XIV, § 1. In this case, the district court applied the general rule and declined to apply the exception. The court therefore dismissed as time-barred claims for personal injury resulting in wrongful death filed by Plaintiff Marc Grano, as personal representative of the wrongful death estate (the Estate) of Decedent Cynthia Caton, and claims for loss of consortium filed by Plaintiffs Harry Caton, who is Decedent's husband, and Sean Caton and Aaron Caton, who are

---

1In this opinion all references to the MMA are to the current version of the Act. This appeal requires us to apply Sections 41-5-3, 41-5-5, and 41-5-13 of the MMA. Although the Legislature made various amendments to the MMA after the filing of this lawsuit, including to these three sections, those amendments do not change how the relevant sections apply to the facts and arguments before us. Compare § 41-5-3(C) (1977) (defining "malpractice claim"), with 2021 N.M. Laws, ch. 16, § 1 (adding various definitions, and changing the applicable subsection of "malpractice claim" without changing its definition of the term), and 2021 N.M. Laws, 2nd Spec. Sess., ch. 5, § 1 (same), and 2023 N.M. Laws, ch. 207, § 1 (same). Compare § 41-5-5 (1992) (outlining the requirements necessary to qualify for the benefits of the MMA), with 2021 N.M. Laws, ch. 16, § 2 (altering the necessary requirements for MMA benefits), and 2023 N.M. Laws, ch. 207, § 2 (same). Compare § 41-5-13 (1976) (creating a three-year repose period for all malpractice claims, but providing an exception for minors), with 2021 N.M. Laws, ch. 16, § 6 (amending the repose period for malpractice claims brought by minors, but leaving unamended the repose period for other malpractice claims).

Decedent's sons (collectively, the Family), against Drs. Julia Keating and Jeffrey Hebert (collectively, the Doctors). This appeal involves four timeliness questions that arise because the district court concluded that the Doctors' last acts of alleged malpractice occurred three years before Decedent died; it is undisputed that Decedent discovered the alleged malpractice over two years before she died; and it is undisputed that Plaintiffs did not file their claims against the Doctors until more than three years after Decedent discovered the alleged malpractice.

**{2}** The first question is one of first impression in New Mexico: whether the district court correctly determined that the MMA's statute of repose applies to the Family's loss of consortium claims, or whether the Family is correct that the statute does not apply to these claims because Decedent's family members were not patients of the Doctors. We agree with the district court that these claims, which are premised on allegations of negligent medical care, are subject to the MMA's statute of repose.

**{3}** The second question is whether the district court erred by concluding that Plaintiffs failed to rebut Dr. Keating's prima facie case about when her last act of alleged malpractice occurred. We conclude that the district court did not err, and we therefore hold that the wrongful death and loss of consortium claims against Dr. Keating, like their claims against Dr. Hebert, were filed beyond the three-year statutory limit set forth in the MMA.

**{4}** This holding brings us to the third and fourth questions, both of which are issues of first impression pertinent to whether the due process exception for late-accruing claims allowed Plaintiffs more time to bring their claims. The third question is whether the district court is correct that the MMA applies when determining the time of accrual of claims for wrongful death predicated on allegations of negligent medical care, or whether the Estate is correct that the applicable statute is the Wrongful Death Act (WDA), NMSA 1978, §§ 41-2-1 to -4 (1882, as amended through 2001). We agree with the district court. We hold that the Estate's wrongful death claims accrued when Decedent discovered the alleged acts of malpractice, not when Decedent died. Because those claims did not accrue in the final year of the repose period, we hold that the due process exception does not apply, and we affirm the district court's ruling that the claims are time-barred.

**{5}** The fourth question is whether the district court is correct that the Family's loss of consortium claims accrued when Decedent discovered the act of alleged malpractice, or instead whether those claims accrued when the family members who brought those claims knew or should have known of their injuries and the cause of their injuries. We hold that accrual is determined based on the latter test. Because the district court relied on an erroneous legal conclusion to grant summary judgment against the Family on their loss of consortium claims, we reverse and remand for further proceedings on those claims consistent with this opinion.

**BACKGROUND**

## I.    Factual History

{6}    The relevant facts are undisputed. Dr. Keating was Decedent's primary care provider from 2007 to 2015. In the spring of 2015, Decedent saw Dr. Keating for a mass in her breast, after which Dr. Keating ordered a mammogram and a CT scan. Dr. Hebert, a radiologist, analyzed the scan. Believing the mass to be a post-traumatic abnormality, Dr. Hebert suggested a follow up CT scan six months later and advised that it was unnecessary to perform a biopsy. On November 9, 2015, another CT scan was done, which Dr. Hebert also analyzed and compared to the scan from the spring. Although the lump had grown, he reaffirmed his conclusion from the spring and advised that further sampling was unnecessary. On December 3, 2015, Dr. Keating discussed the results with Decedent. Dr. Keating suggested further discussion of the results during Decedent's annual checkup, which was scheduled for mid-January 2016.

{7}    In early January, Decedent canceled the checkup, and on March 11, 2016, she had her first visit with a new primary care physician, who subsequently ordered CT scans, and a biopsy of the mass was ordered by another physician. The results showed the mass had grown since the second CT scan. The mass was surgically removed and diagnosed as cancerous on July 12, 2016. Over two years later, on September 7, 2018, Decedent passed away. Her death was caused by the cancer.

## II.    Procedural History

{8}    On February 8, 2019, Plaintiffs filed a complaint against Dr. Keating that included claims by the Estate for personal injury resulting in wrongful death and claims by the Family for loss of consortium. On June 20, 2019, Plaintiffs amended the complaint to bring substantially similar claims against Dr. Hebert. To support both the wrongful death and loss of consortium claims, Plaintiffs presented several legal theories, including two relevant to the issues on appeal: the Doctors negligently provided medical treatment to Decedent, and they negligently set up various systems of communication with, treatment for, and caring of patients.

{9}    Drs. Keating and Hebert filed separate motions for summary judgment arguing that the wrongful death and loss of consortium claims were filed too late under the MMA's statute of repose.[2] Dr. Keating asserted that the latest possible date she could have committed malpractice under Plaintiffs' alleged facts was December 3, 2015, the last date she treated Decedent; and therefore the three-year repose period for the claims against her expired December 3, 2018, a few months before Plaintiffs filed suit against her on February 8, 2019. Plaintiffs responded that the repose period actually began on March 11, 2016, when Decedent had her first visit with a new doctor and had

---

2Dr. Keating filed additional summary judgment motions on grounds unrelated to the questions presented in this appeal. Specifically, she challenged the merits of the loss of consortium claims brought by Decedent's sons, as well as the viability of two of the theories supporting the Estate's wrongful death claim (breach of fiduciary duty and unfair trade practices). The district court granted these motions. Because Plaintiffs did not appeal these rulings, they are final, and our subsequent references to Decedent's sons' loss of consortium claims are only to their claims against Dr. Hebert.

her records forwarded to that doctor. In the alternative, they argued that even if the repose period ended on December 3, 2018, as Dr. Keating asserted, the due process exception allowed them additional time to file their complaint because their claims accrued when Decedent died, which was less than a year before the claims against the Doctors were filed.

**{10}** Dr. Hebert's untimeliness argument was similar to Dr. Keating's. He contended that his last act of alleged malpractice was his report on November 9, 2015, that the three-year period ended on November 9, 2018, and that Plaintiffs did not name him as a defendant until June 20, 2019. In response to Dr. Hebert's motion, Plaintiffs did not dispute the date of the last act of alleged malpractice; they relied exclusively on the due process exception.

**{11}** The district court agreed with the Doctors on all of the issues raised and dismissed all of Plaintiffs' claims against the Doctors. Plaintiffs appeal.

## DISCUSSION

**{12}** We review orders granting summary judgment de novo. *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243. "Summary judgment is appropriate in the absence of any genuine issues of material fact and where the movant is entitled to judgment as a matter of law." *Id.*; *accord* Rule 1-056(C) NMRA. "[W]e examine the whole record on review, considering the facts in a light most favorable to the nonmoving party and drawing all reasonable inferences in support of a trial on the merits." *Zamora*, 2014-NMSC-035, ¶ 9. When the appropriateness of summary judgment hinges on a legal question, including statutory interpretation, our review is de novo. *See Wilson v. Denver*, 1998-NMSC-016, ¶ 13, 125 N.M. 308, 961 P.2d 153.

**{13}** Plaintiffs present four challenges to the summary judgment orders. First, the Family argues that the MMA's statute of repose does not apply to their loss of consortium claims because they were not the Doctors' patients. Second, Plaintiffs contend that summary judgment was inappropriate as to their wrongful death and loss of consortium claims against Dr. Keating because, although she made a prima facie case that the last act of malpractice alleged against her occurred on December 3, 2015, Plaintiffs rebutted that case with evidence that Dr. Keating had an ongoing duty to revisit and correct her diagnosis of Decedent until she began treatment with a new primary care doctor on March 11, 2016. As a consequence, according to Plaintiffs, their claims against Dr. Keating are timely even if the due process exception for late-accruing claims does not apply. Third, the Estate argues that—even if the wrongful death claims were filed after the repose periods ended—the due process exception for late-accruing claims applies because the WDA, rather than the MMA, governs the accrual of the wrongful death claims, and those claims therefore did not accrue until Decedent died. Fourth, the Family argues that—even if they filed their loss of consortium claims after the repose

periods ended—the due process exception applies because those claims accrued when Decedent died, which was late in the repose periods.[3]

**{14}**    We address each argument separately in the discussion sections that follow. In summary, as to the first argument, we hold that the Family's loss of consortium claims are subject to the MMA's statute of repose—just like the Estate's wrongful death claims—because their claims are predicated on the Doctors' allegedly negligent medical care. As to the second argument, we hold that Plaintiffs failed to rebut Dr. Keating's prima facie case, and therefore that Plaintiffs' claims against Dr. Keating, like their claims against Dr. Hebert, were filed beyond the three-year statutory limit. As to the third argument, we hold that the Estate's wrongful death claims accrued when Decedent first learned of her misdiagnosis, which was during the first year of the repose period, and that the due process exception therefore does not apply. As to the fourth argument, we hold that the district court erred by concluding that the Family's loss of consortium claims accrued when Decedent learned of her injury and by granting summary judgment as to the applicability of the due process exception on that basis. Instead, each of those claims accrued when the Family member bringing the claim learned of their injury and its cause.

**The MMA's Repose Periods**

**I.    The MMA's Statute of Repose Applies to Plaintiffs' Loss of Consortium and Wrongful Death Claims**

**{15}**    The district court determined that Plaintiffs' wrongful death and loss of consortium claims are subject the MMA's statute of repose, which applies to "claim[s] for malpractice . . . against a health care provider." Section 41-5-13; *see Cahn*, 2018-NMSC-002, ¶ 15 (characterizing Section 41-5-13 as a statute of repose). New Mexico law is clear that wrongful death claims based on allegations of medical malpractice are governed by the MMA's statute of repose. *See* § 41-5-3(I) (defining "malpractice claim," in pertinent part, as "any cause of action arising in this state against a health care

---

[3]We decline to address the merits of Plaintiffs' arguments that Dr. Keating waived her statute of repose defense by waiting for over two years to raise it and that the doctrine of laches barred her from asserting the statute of repose defense. Plaintiffs have not adequately developed their waiver argument. *See* Rule 12-318(A)(4) NMRA. Contrary to Rule 12-318(A)(4), Plaintiffs fail to address New Mexico precedent on waiver generally and waiver of defenses specifically. *Cf. Garcia v. Marquez*, 1984-NMSC-074, ¶ 22, 101 N.M. 427, 684 P.2d 513 (discussing waiver generally); *Chavez v. Kitsch*, 1962-NMSC-122, ¶¶ 7-13, 70 N.M. 439, 374 P.2d 497 (holding a statute of limitations defense was waived without properly pleading it); *Hagen v. Faherty*, 2003-NMCA-060, ¶¶ 10-20, 133 N.M. 605, 66 P.3d 974 (estopping a party from asserting a properly pled statute of limitations defense); *Trei v. AMTX Hotel Corp.*, 2014-NMCA-104, ¶¶ 14-17, 336 P.3d 393 (discussing whether the defendant waived their personal jurisdiction defense based on the defendant's subsequent actions in the litigation). Plaintiffs rely only on authority from other jurisdictions, but they do not explain why we should conclude that the approaches taken by those jurisdictions are consistent with New Mexico law. We will not develop an argument for them. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (recognizing that appellate courts should not develop arguments for parties because to do so would "create[] a strain on judicial resources and a substantial risk of error"). As for Plaintiffs' laches argument, they did not preserve it, and we therefore do not consider it. *See* Rule 12-321 NMRA.

provider for medical treatment, lack of medical treatment or other claimed departure from accepted standards of health care that proximately results in injury to the patient, whether the patient's claim or cause of action sounds in tort or contract, and includes but is not limited to actions based on battery or *wrongful death*" (emphasis added)); *Armijo v. Tandysh*, 1981-NMCA-098, ¶ 6, 98 N.M. 181, 646 P.2d 1245, *overruled on other grounds by Roberts v. Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶¶ 9-19, 114 N.M. 248, 837 P.2d 442. The Estate does not challenge this established law. However, the Family argues that the MMA's statute of repose "does not apply" to their loss of consortium claims because they were not patients of either Dr. Keating or Dr. Hebert. We disagree.[4]

**{16}** Contrary to the Family's argument, whether a claim is a medical malpractice claim and is therefore governed by the MMA depends on whether the claim is predicated on an allegation of professional negligence by a health care practitioner, not on whether the claim is brought by the patient or a nonpatient. The MMA defines "malpractice claim," in relevant part, as "any cause of action arising in this state against a health care provider for medical treatment, lack of medical treatment or other claimed departure from accepted standards of health care that proximately results in injury to the patient." Section 41-5-3(I). Applying this definition, this Court has held that a claim is for malpractice if its "gravamen . . . is predicated upon the allegation of professional negligence." *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 18, 267 P.3d 70. The Family's claims satisfy that test. To support the loss of consortium claims, the Family alleges in their complaint that the Doctors engaged in "wrongful conduct," that this conduct was performed in the Doctors' professional capacity, and that it amounted to "negligent . . . care and treatment of [Decedent]." It makes no difference that the claims were brought by the Family, rather than Decedent. Our Supreme Court has concluded that, although the text of the statutory definition could be read to include only claims made by patients, "the [Legislature] intended to cover all causes of action arising in New Mexico that are based on acts of malpractice," including claims brought by nonpatients. *Wilschinsky v. Medina*, 1989-NMSC-047, ¶¶ 20-26, 108 N.M. 511, 775 P.2d 713; *see also Duarte-Afara*, 2011-NMCA-112, ¶¶ 15-20 (applying the MMA's statute of repose to a medical center's claim for equitable indemnification against doctors because it was predicated on the theory that the doctors engaged in malpractice). We therefore hold that the Family's loss of consortium claims are malpractice claims and that, because the Doctors are qualified health care providers,[5] the claims are subject to the MMA's statute of repose.

---

4Although this Court applied the MMA's statute of repose to loss of consortium claims brought by the parents of a child based on allegations of medical malpractice in Garrity v. Driskill, 2022-NMCA-054, ¶¶ 2-3, 6, 517 P.3d 928, the applicability of the statute of repose was not a disputed question in Garrity, and it therefore does not resolve the question presented in this case. See Britton v. Off. of the Att'y Gen., 2019-NMCA-002, ¶ 24, 433 P.3d 320 (recognizing that cases are not authority for propositions not considered).
5Plaintiffs do not challenge the district court's determination that the Doctors are "qualified health care providers." See § 41-5-5 (outlining the qualifications necessary to benefit from the provisions of the MMA).

## II. Plaintiffs Filed Their Wrongful Death and Loss of Consortium Claims More Than Three Years After the Last Acts of Alleged Malpractice

**{17}** The statute of repose in the MMA sets a three-year time limit to bring malpractice claims against health care providers. *See* § 41-5-13. Timeliness is determined by the "occurrence rule," under which the time to file a claim "runs from a statutorily determined triggering event," which is the "act of malpractice." *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶¶ 50, 53, 121 N.M. 821, 918 P.2d 1321; *accord* § 41-5-13. The clock starts at the last act of malpractice, "even though the patient may be oblivious of any harm." *Cummings*, 1996-NMSC-035, ¶ 47. The MMA does not define "act of malpractice," *see* § 41-5-3 (defining terms in the MMA), but this Court has defined "malpractice" as "an instance of negligence or incompetence on the part of a health care provider." *Chavez v. Delgado*, 2014-NMCA-014, ¶ 11, 316 P.3d 907 (alterations, internal quotation marks, and citation omitted).

**{18}** In this case, Plaintiffs do not dispute that Dr. Keating established a prima facie case that December 3, 2015, was the last possible act of alleged malpractice that could trigger her repose period for both the wrongful death and loss of consortium claims. *See Hernandez v. Reuter*, 2023-NMCA-007, ¶ 20, 523 P.3d 614 (stating that we first review whether the movant for summary judgment established a prima facie case). Plaintiffs' argument is that they rebutted Dr. Keating's prima facie case by establishing that she committed a continuing tort by failing to reconsider her diagnosis between December 3, 2015, when Decedent had her last appointment with Dr. Keating, and March 11, 2016, when Decedent began receiving treatment from a new health care provider.[6] We disagree because Plaintiffs failed to carry their burden of presenting "specific evidentiary facts," *see Freeman v. Fairchild*, 2018-NMSC-023, ¶ 16, 416 P.3d 264 (internal quotation marks and citation omitted), that the standard of care required Dr. Keating to reconsider her diagnosis of Decedent at any point after December 3, 2015. *See Juarez v. Nelson*, 2003-NMCA-011, ¶ 15, 133 N.M. 168, 61 P.3d 877 (concluding that because it was undisputed that the doctor and patient did not see each other during the period in question, the plaintiff's continuing tort theory depended on whether the standard of care required the doctor to revisit his diagnosis during that time), *overruled on other grounds by Tomlinson v. George*, 2005-NMSC-020, ¶ 18, 138 N.M. 34, 116 P.3d 105. When, as in this case, the act of alleged malpractice "involves the use of specialized knowledge or skill to make a judgment call as to the appropriate thing to do or not do," expert testimony is generally required to establish the applicable standard of care. *Richter v. Presbyterian Healthcare Servs.*, 2014-NMCA-056, ¶ 22, 326 P.3d 50; *accord* UJI 13-1101 NMRA. Plaintiffs argue their expert established as much. We disagree. Plaintiffs point us to their expert's opinion that "[t]he standard of care required Dr. Keating to correct any of the . . . deficiencies [that the expert identified] up until [Decedent] established care with a new provider" on March 11, 2016. Critically, none of the alleged

---

[6]Dr. Keating argues that, instead of a continuing tort, Plaintiffs implicitly invoke the continuous treatment doctrine, which does not toll the statutory period. To the extent that Plaintiffs rely on the continuous treatment doctrine, we agree with Dr. Keating that the doctrine did not afford Plaintiffs additional time to bring their claims. See Juarez v. Nelson, 2003-NMCA-011, ¶¶ 11, 13, 133 N.M. 168, 61 P.3d 877, overruled on other grounds by Tomlinson v. George, 2005-NMSC-020, ¶ 18, 138 N.M. 34, 116 P.3d 105.

deficiencies identified by Plaintiffs' expert were that Dr. Keating failed to reconsider her diagnosis of Decedent after December 3, 2015. The alleged deficiencies were instead that Dr. Keating insufficiently obtained and followed up on Decedent's medical history; did not follow up on or improperly requested a follow up exam at various times in the spring and summer of 2015; failed to refer Decedent to a surgeon or radiologist after Decedent's various tests; and requested the wrong type of mammogram. Because we do not believe Plaintiffs' expert's opinions establish the standard of care that Plaintiffs seek to impose on Dr. Keating, we conclude that Plaintiffs failed to rebut Dr. Keating's prima facie case. *See Juarez*, 2003-NMCA-011, ¶ 15 (affirming an order granting summary judgment because "[the p]laintiffs did not come forward with any evidence . . . as to whether the applicable standard of care imposed on [the defendant doctor] a duty to reconsider his decision to treat [the patient] himself or to rethink his diagnosis between [the period of time at issue in that case]").

**{19}**    We therefore hold that the district court did not err by concluding that Plaintiffs filed their claims against Dr. Keating outside of the repose period. The clock began ticking on December 3, 2015, and it expired three years later on December 3, 2018. *See* § 41-5-13. But Plaintiffs did not file their claims against Dr. Keating until February 8, 2019. Because all of Plaintiffs' claims against the Doctors were filed outside of the repose periods,[7] we must next determine whether the district court erred by concluding—based on the record before it—that the due process exception does not apply to the wrongful death and loss of consortium claims because those claims did not accrue during the last year of the repose period.

**The Due Process Exception**

**{20}**    The due process exception only applies to claims that accrue in the final twelve months of the repose period. *Cahn*, 2018-NMSC-002, ¶¶ 16, 20-21. Unlike the analysis for the statute of repose's general rule, which hinges on when the last act of malpractice occurred, *see Cummings*, 1996-NMSC-035, ¶¶ 50-53, the analysis for the due process exception hinges on when the claim accrued. *Cahn*, 2018-NMSC-002, ¶ 16. A claim accrues once "the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Roberts*, 1992-NMSC-042, ¶ 27; *accord Maestas v. Zager*, 2007-NMSC-003, ¶ 22, 141 N.M. 154, 152 P.3d 141.

**{21}**    Plaintiffs argue that the due process exception affords them an additional year to bring their wrongful death and loss of consortium claims against the Doctors because all of these claims accrued when Decedent died on September 7, 2018, which was late in the repose period for each of the Doctors. The Doctors argue that all of Plaintiffs' claims accrued when Decedent discovered her potential malpractice claim on July 12, 2016, which was not in the final year of the repose period, and that the due process exception therefore does not apply.

---

7Plaintiffs do not challenge the district court's determination that the last act of alleged malpractice by Dr. Hebert occurred on November 9, 2015; that the three-year repose period ended November 9, 2018; and that they did not sue Dr. Hebert until June 20, 2019.

**{22}**    We hold that the district court did not err by entering summary judgment on the Estate's claims for wrongful death based on medical malpractice, which accrued when Decedent discovered her injury—that is, when she discovered the potential malpractice on July 12, 2016. However, we hold that the district court erred by entering summary judgment on the Family's claims for loss of consortium because the district court did so based on the erroneous legal conclusion that these claims accrued when Decedent discovered her injury; instead, each loss of consortium claim accrued when the Plaintiff bringing that claim learned of his injury and of its cause. We discuss the wrongful death claims and the loss of consortium claims in turn.

### III.    The Due Process Exception Does Not Apply to the Wrongful Death Claims Because They Accrued When Decedent Discovered the Malpractice, Which Was Not Late in the Repose Periods

**{23}**    Plaintiffs argue that the Estate's wrongful death claim accrued when Decedent died. Plaintiffs contend that the accrual date should be determined based on a provision in Section 41-2-2 of the WDA: "The cause of action [under the WDA] accrues as of the date of death." We disagree because the MMA, rather than the WDA, applies, and the Estate's claim therefore accrued when Decedent was diagnosed with cancer.

**{24}**    The fundamental problem with Plaintiffs' position is that this Court has already held that the timeliness of wrongful death claims based on allegations of medical malpractice is not governed by the WDA. *See Armijo*, 1981-NMCA-098, ¶ 6; *Mackey v. Burke*, 1984-NMCA-028, ¶¶ 2, 23, 102 N.M. 294, 694 P.2d 1359, *overruled on other grounds by Chavez v. Regents of Univ. of N.M.*, 1985-NMSC-114, ¶¶ 4-5, 103 N.M. 606, 711 P.2d 883. Instead, the MMA's statute of repose, Section 41-5-13, applies. *See* § 41-5-3(I) (defining malpractice claim to include, among other things, "actions based on . . . wrongful death"); *Armijo*, 1981-NMCA-098, ¶ 6 (same). We therefore look to MMA precedent for guidance about when the Estate's wrongful death claim accrued.

**{25}**    Although precedent does not specifically address this question, it establishes key concepts that point to our answer. Precedent establishes the "discovery rule," *Cummings*, 1996-NMSC-035, ¶ 47, which provides that a patient's medical malpractice claim accrues when "the plaintiff discovers that [they] ha[ve] suffered malpractice." *Cahn*, 2018-NMSC-002, ¶ 21; *see Tomlinson*, 2005-NMSC-020, ¶ 10 (explaining that the accrual date was the day the plaintiff "was aware of a potential claim for malpractice against" the defendant). A patient's claim accrues when they first become "subjective[ly] aware[] that something is wrong"—their "first feelings of pain or discomfort"—or when they get their "first objective confirmation" of potential malpractice "through medical diagnosis that previous medical care was improper." *Cummings*, 1996-NMSC-035, ¶ 47. Precedent recognizes a related point that is critically important here. The injury need not be complete or fully developed for the claim to accrue; the claim accrues once the patient discovers some demonstrable "harm or increased risk" sufficient to support their malpractice claim. *See id.* ¶ 58. Under the discovery rule, what matters is the fact of the injury, not the extent of the injury. *Cf. Maestas*, 2007-NMSC-003, ¶ 22 (applying the discovery rule in the context of the Tort Claims Act and stating that "a cause of action

brought under [the Tort Claims Act] will accrue regardless of whether or not the plaintiff is aware of the full extent of [their] injury"); *Martinez-Sandoval v. Kirsch*, 1994-NMCA-115, ¶¶ 3, 26, 118 N.M. 616, 884 P.2d 507 (applying the discovery rule to the statute of limitations for a personal injury action and observing that "[t]he limitations period is not tolled simply because a plaintiff does not know the full extent of [their] injury; the statute begins to run once [they] know[] or should know sufficient facts to constitute a cause of action").

**{26}** We will not ignore these lessons from precedent merely because the plaintiff bringing the medical malpractice claim for personal injury is a patient's estate after the patient has died rather than the patient while the patient is alive. A wrongful death claim is the patient's personal injury claim transmitted to the personal representative of the wrongful death estate, and the estate is not freed of established limitations on the patient's claim. The WDA is a "survival statute," meaning the Act allows "a decedent's claim [to] survive[] [their] death." *Est. of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 6, 315 P.3d 298 (internal quotation marks and citation omitted). The WDA "does not create a new cause of action." *Id.* ¶ 7. Instead, upon the decedent's death, the WDA "transmits" the cause of action that the decedent held during *their* life to the personal representative, who pursues "the same cause of action exactly as it would have been possessed by the decedent." *Id.* ¶¶ 6-7. Importantly, "any limitations on the decedent's personal right to maintain an action will survive as well." *Id.* ¶ 6. We therefore determine the accrual date for an estate's wrongful death claim that is based on allegations of medical malpractice in exactly the same way that we determine the accrual date for a patient's medical malpractice claim.

**{27}** In this case, the malpractice claim accrued on July 12, 2016, when Decedent discovered the alleged misdiagnoses by the Doctors. After leaving Dr. Keating's care, Decedent went to another doctor and was diagnosed with cancer on July 12, 2016, and at that time Decedent should have known that she potentially suffered malpractice under the care of the Doctors. *See Cummings*, 1996-NMSC-035, ¶¶ 6, 47, 57 (stating that a proper medical diagnosis was objective confirmation alerting a plaintiff to possible malpractice and holding the accrual date for a misdiagnosis was the date the patient was properly diagnosed). Because Decedent's malpractice claims for personal injury against the Doctors accrued on July 12, 2016, the Estate's wrongful death claims accrued on the same date, *see Est. of Krahmer*, 2014-NMCA-001, ¶ 6, which was not during the last year of either repose period. We therefore conclude that the due process exception does not apply, *see Cahn*, 2018-NMSC-002, ¶ 16, and that the district court correctly dismissed the Estate's wrongful death claim as untimely under the MMA's statute of repose.

## IV. A Loss of Consortium Claim Accrues, for Purposes of the Due Process Exception, When the Claimant Knows or Should Have Known of Their Injury and its Cause

**{28}** We do not reach the same result for the Family's loss of consortium claims because these claims accrued when each member of the Family knew or should have

known of his own injury—the harm to his relationship with Decedent—and of its cause. The district court erred by concluding that the claims accrued when Decedent discovered her injury, and that conclusion was not a proper basis for entering summary judgment against the Family as to the applicability of the due process exception.

**{29}** The parties disagree about which injury is relevant to the accrual inquiry: Plaintiffs say the relevant injuries are those to the relationships between the Family and Decedent, but the Doctors ask us to focus on the injury Decedent suffered because of the Doctors' alleged malpractice. We agree with Plaintiffs. A claim accrues "[o]nce a plaintiff has discovered [*their*] *injury* and the cause of that injury," *Maestas*, 2007-NMSC-003, ¶ 22 (emphasis added), and the injury suffered by a loss of consortium claimant is distinct from the physical injury suffered by the victim of the underlying tort. A loss of consortium claimant "suffer[s] a direct injury"—specifically, an injury "to a relational interest with another"—and the claimant "may seek recovery [for this injury] separately from the underlying tort." *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶ 16, 397 P.3d 1279. Therefore, a loss of consortium claim accrues when the loss of consortium claimant discovers *their* injury—when *they* knew or should have known of the injury to the relationship and of its cause.

**{30}** The district court erroneously concluded that such claims accrue when a patient discovers their injury, and we therefore reverse its order granting summary judgment for the Doctors on this basis. Our holding does not preclude the Doctors from arguing on remand that the Family members learned or should have learned of their injuries and the cause of those injuries too early in the repose periods to warrant application of the due process exception and that the loss of consortium claims are therefore time-barred.

**CONCLUSION**

**{31}** We affirm the dismissal of the wrongful death claims, reverse the dismissal of the loss of consortium claims, and remand for further proceedings consistent with this opinion.

**{32}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**JANE B. YOHALEM, Judge**